# Shambe, Appellant, *v.* Delaware & Hudson R. R. Co.

*Practice, C. P.—Service of process—Summons—Corporations—Foreign corporations—Doing business—Agency—Acts of April 8, 1851, P. L. 353, and June 8, 1911, P. L. 710.*

1. At common law a corporation could be sued only in the territorial jurisdiction where it had its legal domicile.

2. Before a state may compel a corporation of another state to submit to its jurisdiction, or before a corporation may legally be in another state for the purpose of service of process, it must be present in the state by the act of some one authorized to represent it.

3. Registration of a foreign corporation, standing alone, is not a sufficient "coming in" to validate the service of process.

4. The acts of an agent of a foreign corporation must be done within the state, sufficiently to indicate an intention to be bound by her laws relative to suits against it.

5. Where a foreign corporation is in fact doing business in Pennsylvania, it is immaterial whether the business is interstate or intrastate.

6. The fact that it is engaged solely in interstate commerce does not prevent its being sued in Pennsylvania courts, if it is in fact doing business within the state.

7. Decisions relating to taxing, licensing or to state laws that impede the free flow of interstate commerce, do not control the question of service of process.

8. If the acts of a foreign corporation are not sufficient to constitute "doing business" such corporation cannot be held.

9. The rule that "no man shall be condemned in person or property without due notice to appear and an opportunity to be heard," applies to corporations served with process when not legally within the state.

10. The Act of April 8, 1851, P. L. 353, relating to service of process upon foreign corporations, was not repealed by the Act of June 8, 1911, P. L. 710, and suit may be brought under either act.

11. Where a foreign corporation is doing business in the state and has complied with the law as to registration, the place where the action is brought is a matter for our legislature to determine.

12. The essential elements which constitute "doing business," as required by the laws of Pennsylvania, are the same as those necessary under the due process clause of the federal Constitution.

13. Such essentials are (1) the foreign company must be present in the state; (2) by an agent; (3) duly authorized to represent it in the state; (4) the business transacted therein must be by or through such agent; (5) the business engaged in must be sufficient in quantity and quality; and (6) there must be a statute making such corporations amenable to suit.

14. The term "quality of acts" means those directly essential to further corporate acts.

15. The term "quantity of acts" means those which are so continuous and sufficient as to be general or habitual. A single act is not enough.

16. Each case must depend on its own facts, and must show that the essential requirement of jurisdiction has been complied with.

17. The phrase "shall have an agency" in the Act of April 18, 1851, refers to branch offices or agencies for the transaction of the corporation's business.

18. Solicitation of business is not "doing business" within the meaning of the Act of 1851.

19. Solicitation of business for a railroad company, is not necessary to its existence, but is merely collateral or incidental to the main purpose of carrying freight and passengers.

20. The courts have been careful to distinguish between acts which are in aid of the main purpose of a corporation, and those necessary to its existence.

Argued December 6, 1926. Before Moschzisker, C. J., Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 276, Jan. T., 1926, by plaintiff, from order of C. P. No. 2, Phila. Co., March T., 1926, No. 2942, making absolute rule to set aside service of summons and quash writ, in case of Joseph Shambe v. Delaware & Hudson Railroad Co. Affirmed.

Rule to set aside service of summons and quash writ. Before Gordon, J.

The opinion of the Supreme Court states the facts.

Rule absolute. Plaintiff appealed.

*Error assigned* was order, quoting record.

*Lewis W. Colfelt,* with him *Robert M. Bernstein,* for appellant.—The service was valid: Eline v. Ry., 253

Pa. 204; Com. v. R. R., 251 Pa. 6; International Text Book Co. v. Pigg, 217 U. S. 91; International Harvester Co. v. Com., 234 U. S. 579; America Bank v. Bank, 261 U. S. 171.

The having of a branch office answers the requirement of the act: Parke v. Ins. Co., 44 Pa. 422; Lobb v. Cement Co., 285 Pa. 45; Kraus v. Tobacco Co., 284 Pa. 569.

The defendant had an agency in Phila. within the meaning of the act: Parke v. Ins. Co., 44 Pa. 422.

*Paul Bedford* and *John Lewis Evans,* for appellee.— The court below did not have jurisdiction under the Act of 1911: Eline v. R. R., 253 Pa. 204.

The court below did not have jurisdiction under the Act of 1851 because the maintenance of an office and agents in the county for the solicitation of freight did not amount to "having an agency or transacting any business in the county: Parke v. Ins. Co., 44 Pa. 422; Fulton v. Accident Assn., 172 Pa. 117; Southern Coal Ex. v. Sheet & Tube Co., 1 Pa. D. & C. 95; Hoefling v. Ins. Co., 23 Pa. Dist. R. 117; Lindsay v. Steel Corp., 29 Pa. Dist. R. 569; Green v. Ry., 205 U. S. 530.

OPINION BY MR. JUSTICE KEPHART, January 3, 1927:

This appeal raises the question of jurisdiction of the State over foreign corporations. The summons was served in Philadelphia on the Delaware and Hudson Company through an agent. Appellee is a New York corporation, where its principal office is located. It is registered with the state officer, pursuant to the Act of June 8, 1911, P. L. 710.

It operates a railroad in the northeast section of the State, but has neither tracks nor roadbed in Philadelphia County. For ten years rooms were rented in an office building for an agency, known as the General Southern Freight Agent. The doors and windows display the "D. & H." sign, and the stationery, letterheads, envelopes, etc., used is the official stationery of that

company. The telephone is in the company name. The rooms were occupied by a general agent, who employed seven subordinates, four of whom were attached to the Philadelphia territory, and three to the southern district. All employees were paid from the home office in New York.

The principal work or business transacted in Philadelphia was the solicitation of freight. This agency covers Pennsylvania east of Harrisburg, and extends south to Florida. From it, during 1925, originated one million out of twenty-two million tons of freight. How much of this tonnage came from Philadelphia County or this agency in Pennsylvania does not appear. Complaints as to service may be received here and forwarded to New York; these in turn are referred back to communicate the result to the shipper or consignee as the case might be. Lost freight may be traced through this office. In exceptional cases, freight charges and adjustments of freight are received and forwarded to New York. The freight incoming or outbound must pass over other carriers' lines and these adjustments may be made directly through these carriers.

No freight is actually handled, nor are bills of lading. Contracts are not made on account of freight, all must go to the principal office in New York. It is conceded appellee was engaged in commerce of both classes.

At common law a corporation could be sued only in the territorial jurisdiction where it had its legal domicile: Bank of Augusta v. Earle, 13 Peters 519, 586; Eline v. Western Maryland Ry. Co., 253 Pa. 204. Indeed, in its early history it could do no business in a state other than that where it was created except at the will of the other state: Paul v. Virginia, 8 Wall. 168. The Fourteenth Amendment at first did not seem to give any relief from these conditions: Phila. Fire Association v. New York, 119 U. S. 110; Pembina Mining Co. v. Pennsylvania, 125 U. S. 181; Blake v. McClung, 172 U. S. 239, 260, 261; National Council U. A. M. v. State

Council, 203 U. S. 151. A change came about in 1910 when the increase in corporations and the nature and character of their business forced a general recognition under this amendment: Western Union Tel. Co. v. Kansas, 216 U. S. 1; Pullman Co. v. Kansas, 216 U. S. 56; Ludwig v. Western Union Tel. Co., 216 U. S. 146, 156.

Before a state may compel the corporation of another state to submit to its jurisdiction, or before a corporation may legally be in another state for the purpose of service of process, it must be present in the state by the act of some one authorized to represent it: Rosenberg Co. v. Curtis Brown Co., 260 U. S. 516; Bank of America v. Whitney Central National Bank, 261 U. S. 171, 173; see also 30 Harvard Law Review 676, 691. Registration of a foreign corporation, standing alone, is not a sufficient "coming in" to validate the service of process; a corporation can act only through its agents: Chipman, Ltd., v. Jeffery Co., 251 U. S. 373, 374. The acts of the agent must be done within the state sufficiently to indicate an intention to be bound by her laws relative to suits against it: Eline v. Western Maryland Ry. Co., supra.

The fact that a foreign corporation is engaged solely in interstate commerce does not prevent its being sued in our courts or becoming amenable to our laws. If what they are doing, whether intrastate or interstate, amounts to a "doing business" within the state, the requirements of the Fourteenth Amendment to the federal Constitution are satisfied: International Harvester Co. v. Kentucky, 234 U. S. 579. It is there said: "The contention comes to this, so long as a foreign corporation engages in interstate commerce only it is immune from the service of process under the laws of the state in which it is carrying on such business. This is......a novel proposition, and we are unable to find a decision to support it, nor has one been called to our attention." Such corporations are within the state, receiving the protection of its laws.

Where a foreign corporation is in fact doing business in the state as that term is understood, it is immaterial what the commerce may be; they are "here" within our jurisdiction. Decisions relating to taxing, licensing or to state laws that impede the free flow of interstate commerce do not control the question of service of process. As stated by Mr. Justice BRANDEIS in Davis v. Farmers Coöperative Co., 262 U. S. 312, 316, "the requirements of orderly, effective administration of justice are paramount." The degree of business activity must be greater in taxing and other situations: 25 Columbia Law Review 1018.

The state, however, does not possess an unlimited right to impose its jurisdiction on foreign corporations. If its acts are not sufficient to constitute "doing business" they cannot be held. A state has no power to render a personal judgment against a foreign corporation "not doing business within the state": International Harvester Co. v. Kentucky, supra; Davis v. Farmers Coöperative Co., supra; Chipman, Ltd., v. Jeffery Co., supra; Green v. Chicago, Burlington & Quincy Ry. Co., 205 U. S. 530. A judgment so rendered was held a violation of the due process clause, and void. See also Old Wayne Mutual Life Association of Indianapolis v. McDonough, 204 U. S. 8; Pennoyer v. Neff, 95 U. S. 714. "No man shall be condemned in person or property without due notice to appear and an opportunity to be heard," applies to corporations served with process when not legally within the state: Riverside Mills v. Menefee, 237 U. S. 189.

It is admitted appellee was doing business in a certain part of the State, and had registered in compliance with our Act of 1911. Plaintiff might have brought his action in Luzerne County, where the accident happened, serving the secretary of the Commonwealth. He chose, however, to proceed under section 6 of the Act of April 8, 1851, P. L. 353, which provides that suit may be brought against a foreign corporation in any county

where it "shall have an agency, or transact any business......in this Commonwealth, and the writ may be served upon the president, cashier, agent, chief or any other clerk, or upon any directors or agent of such ......corporation within such county." It has been definitely established that this act was not repealed by the Act of 1911, supra, and that suit may be brought under the provisions of either of them: Eline v. Western Maryland Ry. Co., supra.

Where a foreign corporation is doing business in the State and has complied with the law as to registration, the place where the action is to be instituted in the State is a matter for our legislature to determine. The due process of the Fourteenth Amendment in this respect does not extend beyond the fact of doing business within the State. Our State acts, however, as to both domestic and foreign corporations, require "doing business" in the county where suit is brought before jurisdiction can be acquired: Gengenbach v. Willow Grove Park Co., 280 Pa. 278; Eline v. Western Maryland Ry. Co., supra. The essential elements which constitute "doing business," as required by our laws, are the same as those necessary under the due process clause of the federal Constitution. We must ascertain if the following requisite essentials appear in this case: (1) The company must be present in the State, (2) by an agent (International Harvester Company v. Kentucky, supra; Chipman, Ltd., v. Jeffery Co., supra; Eline v. Western Maryland Ry. Co., supra; Riverside Mills v. Menefee, supra; Connecticut Mutual Life Insurance Co. v. Spratley, 172 U. S. 602; Peoples Tobacco Co., Ltd., v. American Tobacco Co., 246 U. S. 79), (3) duly authorized to represent it in the State (International Harvester Co. v. Kentucky, supra); (4) the business transacted therein must be by or through such agent (Connecticut Mutual Life Insurance Co. v. Spratley, supra, 618; Chipman, Ltd., v. Jeffery Co., supra); (5) the business engaged in must be sufficient in quantity and quality

(Rosenberg Co. v. Curtis Brown Co., supra; Green v. Chicago, Burlington & Quincy Ry. Co., supra; Connecticut Mutual Life Insurance Co. v. Spratley, supra; Bank of America v. Whitney Central National Bank, supra; Jackson v. Hillerson, 59 Pa. Superior Ct. 508, 515); (6) there must be a statute making such corporations amenable to suit (Connecticut Mutual Life Insurance Co. v. Spratley, supra). The term "quality of acts" means those directly, furthering or essential to, corporate objects; they do not include incidental acts: Jackson v. Hillerson, supra; Green v. Chicago, Burlington & Quincy Ry. Co., supra. By "quantity of acts" is meant those which are so continuous and sufficient to be termed general or habitual. A single act is not enough: Hunau v. Northern Region Supply Corporation, 262 Federal 181. Each case must depend on its own facts, and must show that the essential requirement of jurisdiction has been complied with.

It is here admitted that all the elements except the fifth, the most important, are present in this case. The phrase "shall have an agency," in the Act of 1851, supra, has been interpreted by this court as referring to branch offices or agencies for the transaction of the corporation's business: Parke v. The Commonwealth Insurance Co., 44 Pa. 422. The point, then, which we must determine, is whether or not defendant transacted business in Philadelphia County sufficient in quantity and quality, with the other elements, to constitute "doing business."

In addition to what we first stated as to solicitation of freight and office work connected therewith, the general agent occasionally acted as a messenger for shippers who request rerouting merchandise already shipped. He communicated the shipper's wish to the operating department. The shipper could have the connecting carrier do this just as well. As agent he might be helpful in ascertaining whether the shipment had reached defendant's lines, but the connecting carrier could also do this. He had no authority to settle any claims either

for or against the company. Once a year he received a check from the shipper in adjustment of freight charges, and once in three years he delivered to a claimant a check for goods lost or injured. The latter acts are occasional and incidental acts. What is the combined effect of all these acts, or does solicitation of business and its subsequent receipt in this State amount to "doing business"?

Appellant argues that in soliciting freight, the service of the railroad company is sold; when the freight is delivered to the connecting carriers, it is tantamount to a delivery to the defendant; when the freight charges are paid either by the consignor or the consignee, it was payment to the defendant for the service rendered that had its origin in Philadelphia County. The argument has force. This court has been careful to distinguish between acts which are in aid of a main purpose, and those necessary to its existence. The former are collateral or incidental, while the latter are direct. A railroad cannot exist as such unless it carries freight and passengers, but it is not necessary to establish soliciting agencies to secure either. That is self-evident; agencies to solicit, multiplied as competition increased. They are used as information or advertising bureaus. True, contracts may follow such acts, but these contracts executed constitute the business. Mr. Justice SADLER, in Gengenback v. Willow Grove Park Co., supra, states the law as to domestic corporations, and the Chief Justice, in Eline v. Western Maryland Ry. Co., supra, as to foreign corporations. Solicitation of business is not "doing business" within the Act of 1851. The minor acts, related above, of business courtesy not compulsory do not affect the main question; nor do the cases of Lobb v. Pennsylvania Cement Co., 285 Pa. 45, or Kraus v. American Tobacco Co., 284 Pa. 569, decide anything to the contrary. They recognize the rule here laid down. Our lower courts have uniformly held situations like

the present as being outside of "doing business" in the State.

Considering the case from the viewpoint of the federal authorities, if we follow the Green Case, supra, we would hold that the acts do not measure up to "doing business." There the railroad was all outside of the state, and, as an incident to its business, freight and passenger traffic was solicited in other parts of the country. For this purpose an agent was employed who had an office in that territory, whose business was to secure passengers and freight. He employed clerks and traveling agents who sold no tickets, and received no payment for transportation of freight. Instead, the agent procured from a connecting railroad an order which gave to the customer the right to receive a ticket over his principal's line; and, as to freight, in some cases bills of lading covering the principal's line were issued by the first carrier to the shipper. The court there held that, although the defendant was doing considerable business of a certain kind, the business shown was nothing more than that of solicitation, not sufficient to constitute 'doing business' in the sense that liability to service is incurred: Rosenberg Co. v. Curtis Brown Co., 260 U. S. 516; Davis v. Farmers Coöperative Co., 262 U. S. 312; Chipman, Ltd., v. Jeffery, supra. But it is urged that International Harvester Co. v. Kentucky, supra, rather than the Green Case, should control. The court there said: "Here was a continuous course of business in the solicitation of orders which were sent to another state, in response to which the machines......were delivered in Kentucky. They might receive payment in money, checks or drafts. They might take notes in settlement payable in Kentucky banks." This was held to be a course of business, not a single transaction. The court also said: "On the other hand, the mere solicitation of business, without more, would not be 'doing business.' "

Mr. Justice DAY, in the International Harvester Case, *supra,* in construing Mr. Justice MOODY'S opinion in the Green Case, says it is an extreme case. It was not overruled and has since been quoted as authority in Minnesota Assn. v. Benn, 261 U. S. 140; Peoples Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 87; Phila. & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 268; Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S. 723, 725; Davis v. Farmers Coöperative Co., *supra;* Rosenberg Co. v. Curtis Brown Co., *supra.* It is stated in 21 R. C. L., section 93, p. 1343, that the tendency of the courts seems to be toward considering agents engaged in soliciting business as the representative of the corporation for the purpose of service of process. A very respectable number of states have not so held. See Rosenblatt v. Bridgeport Metal Goods Mfg. Co., 173 N. Y. S. 331 (name on the door and in telephone directory not significant); Phila. & Reading Ry. Co. v. McKibbin, *supra;* Case v. Smith, Lineaweaver & Co., 152 Fed. 730; Atchison, T. & S. F. Ry. Co. v. Weeks, 254 Fed. 513; Hovey v. DeLong Hook & Eye Co., 211 N. Y. 420, 105 N. E. 667; Pittsburgh & Shawmut Coal Co. v. State, 192 N. Y. S. 310; American Art Works v. Chicago Picture Frame Works, 264 Ill. 610, 106 N. E. 440.

The judgment of the court below is affirmed.

Mr. Justice FRAZER dissented.