## Canter *v.* American Honda Motor Corporation, Appellant.

Argued April 25, 1967.  Before BELL, C. J., MUS-
MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph G. Manta,* with him *James M. Marsh,* and
*LaBrum and Doak,* for appellant.

*George P. Williams, III,* with him *Lawrence T.
Hoyle, Jr.,* and *Schnader, Harrison, Segal & Lewis,* for
appellee.

OPINION BY MR. JUSTICE O'BRIEN, June 29, 1967:

On January 13, 1966, plaintiff, Irving Canter, in-
stituted an action of trespass in Philadelphia County
against defendant, American Honda Motor Corpora-
tion (Honda), for personal injuries sustained in an
accident which took place on May 7, 1964, in Mont-
gomery County.  The accident occurred while plaintiff

was driving a motorcycle manufactured by defendant, Honda, and sold to one Mal Schlecter, by Motor Sport, Inc., a/k/a M-S, Inc. Plaintiff's complaint alleged that defendant, Honda, was negligent in the design, manufacture, and testing of the motorcycle, as well as in failing to warn dealers and users of certain alleged dangerous characteristics of the motorcycle. On March 2, 1966, the defendant, Honda, filed a complaint against Motor Sport, Inc., seeking to join Motor Sport as an additional defendant, alleging that Motor Sport was negligent in failing properly to assemble, adjust, and test the motorcycle and its component parts; and further, that Motor Sport was either solely liable, jointly and severally liable with the defendant, Honda, or liable over to Honda.

Motor Sport filed preliminary objections, raising the question of venue under Pa. R. C. P. 2179, setting forth (1) that it is a Delaware Corporation, having its principal place of business and registered office in Delaware County; (2) that it had never conducted business in Philadelphia County; (3) that the accident occurred and the cause of action arose in Montgomery County, and (4) that no transaction or occurrence out of which the cause of action arose took place in Philadelphia County.

The defendant answered the additional defendant's preliminary objections, asserting it had no knowledge as to the truth of these assertions. The defendant took the deposition of one John J. Greytak, general manager and stockholder of additional defendant. The deposition established that additional defendant had a place of business at 95 Old York Road, Jenkintown, in Montgomery County, in addition to its other location in Delaware County. The deposition further revealed that the additional defendant never had a business location in Philadelphia County; that the nature of the additional defendant's business is the selling and

servicing of new and used automobiles, which included the sale and servicing of motorcycles in 1964. The deposition revealed that Motor Sport advertises on local radio and in local newspapers, such as the Philadelphia Inquirer and the Bulletin, and on major radio stations in the Philadelphia Area. Mr. Greytak related that he believed about 20% of his total business came from Philadelphia.

When questioned about actual sales taking place in Philadelphia, Mr. Greytak indicated that some demonstrations of cars were made in Philadelphia, and perhaps some agreements of sale were signed in Philadelphia. The court below concluded from the deposition and the oral argument that gross sales and service business in 1964 was 3.7 million dollars, and that in 1965, 4.1 million dollars. Mr. Greytak related that a very minor portion of his business, such as 1 or 2 percent, was consummated in the City of Philadelphia.

Pa. R. C. P. 2179(a), governing venue, provides: "(a) Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in (1) the county where its registered office or principal place of business is located; or (2) a county where it regularly conducts business; (3) the county where the cause of action arose; or (4) a county where a transaction or occurrence took place out of which the cause of action arose."

In this case, the court below correctly concluded that No. (2) only is applicable and, therefore, the question before us, as it was before that court, is whether the additional defendant regularly conducts business in Philadelphia County. In *Monaco v. Montgomery Cab Company*, 417 Pa. 135, 142, 143, 208 A. 2d 252 (1965), we said: "The leading prior case is Shambe v. Delaware & Hudson R.R. Co., 288 Pa. 240, 135 Atl. 755 (1927). We refer to that case here for only one

purpose—for the light it sheds on the standard of 'regularly conducts business' set forth in the corporations *venue* rule, Pa. R. C. P. 2179(a)(2). The problem of state court *jurisdiction* over foreign corporations, which Shambe also dealt with, is regulated by the Business Corporation Law. See Act of May 5, 1933, P. L. 364, §1011C. We said that, when venue in a particular county depends upon 'doing business there', 'the business engaged in must be sufficient in quantity and quality. . . . The term "quality of acts" means those directly, furthering or essential to, corporate objects; they do not include incidental acts. . . . By "quantity of acts" is meant those which are so continuous and sufficient to be termed general or habitual. A single act is not enough.' Shambe v. Delaware, supra, at pp. 246-247. In our opinion, these standards are appropriate in determining where a corporation 'regularly conducts business' within the meaning of Rule 2179(a) (2), for the purpose of venue.

"In applying these standards we recognize that '[e]ach case must depend on its own facts, . . . .' Shambe, supra, at p. 247. Accordingly, we will not overturn a lower court's determination that a corporation was not regularly conducting business in a particular county when such conclusion is a reasonable one in view of the facts. Cf. New v. Robinson-Houchin Optical Co., 357 Pa. 47, 49, 53 A. 2d 79, 80 (1947).

"Defendant is engaged in the taxicab business. Under its certificate from the Public Utility Commission, while it is prohibited from picking up passengers in Philadelphia County, it is permitted to pick them up in Montgomery County and take them to Philadelphia County. From five to ten percent of its gross business is so constituted. In other words, five to ten percent of its fares are collected in Philadelphia County at the end of the rides which involve driving a cab there. And, of course, the cab must be driven in Philadelphia

County in order to return to Montgomery County, although it must be done without a passenger.

"In our opinion, on the basis of these facts, the lower court's determination that defendant did not 'regularly conduc[t] business' in Philadelphia County was unreasonable. Clearly, the acts of driving into Philadelphia County at the request of customers and collecting fares there were acts directly essential to and in furtherance of corporate objects and, therefore, were of sufficient quality. Just as clearly, the acts were performed habitually and, therefore, were of sufficient quantity. [citing cases]. It must be remembered that it is the word 'regularly' which we are construing and not 'principally.' A corporation may perform acts 'regularly' even though these acts make up a small part of its total activities. See Smerk v. Philadelphia Suburban Transportation Company, 13 Pa. D. & C. 2d 454 (1958). Nor does 'regularly' necessarily mean, as defendant contends, that the acts must be performed on a fixed schedule or, when driving is involved, over a fixed route. The question is whether the acts are being 'regularly' performed within the context of the particular business." (Emphasis in original.)

In the instant case, we are satisfied that under our holding in *Monaco,* the additional defendant's business activities as described, were of sufficient quality, quantity and regularity as to constitute regularly conducting business. The acts of driving into Philadelphia to demonstrate cars and to consummate sales were acts directly essential to and in furtherance of corporate objects. These acts certainly meet the test of quality, as outlined in *Monaco.*

Furthermore, we must consider the word "regularly", which we are construing. As we said in *Monaco,* and which we have repeated here, "A corporation may perform acts 'regularly' even though these acts make up a small part of its total activities."

44

We conclude that 1 to 2 percent of the total business was sufficient to satisfy the test set up in *Monaco* as to quantity. The court below erroneously sustained the additional defendant's preliminary objections.

The order of the court below is reversed, with a procedendo.

Mr. Justice COHEN took no part in the consideration or decision of this case.