598 A.2d 1027

**Marilyn BATTUELLO and Paul Battuello, Individually and as Co–Administrators of the Estate of Brett Battuello, Deceased, Appellants,**

**v.**

**CAMELBACK SKI CORPORATION, d/b/a Camelback in the Poconos.**

Superior Court of Pennsylvania.

Argued May 22, 1991.

Filed Nov. 7, 1991.

James D. Golkow, Philadelphia, for appellants.

Hugh M. Emory, Paoli, for appellee.

Before WIEAND, BECK and HUDOCK, JJ.

BECK, Judge:

This is an appeal from an order granting preliminary objections alleging improper venue and transferring this action from Philadelphia County to Monroe County.[1] We affirm.

Venue in an action against a corporation is governed by Pennsylvania Rule of Civil Procedure 2179, which states:

> (a) Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in
>
>> (1) the county where its registered office or principal place of business is located;
>>
>> (2) a county where it regularly conducts business;
>>
>> (3) the county where the cause of action arose; or
>>
>> (4) a county where a transaction or occurrence took place out of which the cause of action arose.

The venue dispute in this case revolves around the proper construction of subsection (a)(2) of this rule and arises from the following scenario.

In 1988, Brett Battuello, son of appellants, Marilyn and Paul Battuello, was killed while skiing at a ski area in Monroe County that is owned and operated by appellee, Camelback Ski Corporation. The Battuellos sued Camelback, both individually and as co-administrators of their son's estate, in the Court of Common Pleas for Philadelphia County. Camelback filed preliminary objections alleging that venue was not properly in Philadelphia County in that none of the criterion set forth in Rule 2179 are met in this case. Camelback asserted that it is a Pennsylvania corporation which operates a ski area located in Tannersville, Monroe County, which does not have an office or any employees in Philadelphia, and which does not regularly conduct business in Philadelphia. Appellants argued that venue was proper, relying exclusively on subsection (a)(2) of

1. The trial court's order is immediately appealable as of right under Pa.R.A.P. 311(c).

Rule 2179. They contended that Camelback regularly conducts business in Philadelphia and cited the following in support of this contention:

1. Philadelphia residents ski at Camelback.

2. Eastern Ski Tours, a travel tour company based in Philadelphia, regularly sends its customers to Camelback to ski.

3. Camelback sends promotional brochures to Eastern and provides Eastern with quotes of Camelback prices.

4. Camelback sends promotional brochures to Philadelphia residents who request them.

5. Camelback belongs to an organization called the Pocono Mountains Vacation Bureau which promotes the Poconos, including Camelback, as a vacation resort area and engages in such promotional activity in Philadelphia as well as other areas.

6. At various times in the period from 1982 to 1984, Camelback advertised in a Philadelphia ski publication and in the *Philadelphia Inquirer.*

7. Camelback has an "800" number available for use in Philadelphia.

The trial court rejected appellants' arguments, finding that mere advertisement in Philadelphia by Camelback and its tenuous relationship with Eastern were insufficient grounds for finding that Camelback regularly conducted business in Philadelphia. Therefore, the trial court granted Camelback's preliminary objections and transferred the action to Monroe County.

■ On review of a trial court decision regarding venue, we will reverse only for an abuse of discretion. *Purcell v. Bryn Mawr Hospital,* 525 Pa. 237, 579 A.2d 1282 (1990). The determination depends on the individual facts of each case and will not be disturbed if the trial court's decision is a reasonable one in view of those facts. *Monaco v. Montgomery Cab Co.,* 417 Pa. 135, 208 A.2d 252 (1965).

■ We find no error in the trial court's assessment of the evidence pertinent to venue in this case or in its decision

to transfer the action to Monroe County. In determining whether venue in an action against a corporation is proper on the ground that the corporate defendant regularly conducts business in the county in which it has been sued, we must focus on the nature of the acts the corporate defendant allegedly performs in that county. The business contacts of the corporate defendant with that county must be assessed both as to their quantity and their quality. As the Supreme Court has recently described the proper analysis:

> "A single act is not enough," while "each case must depend on its own facts." "Quality of act" means "those directly, furthering or essential to, corporate objects; they do not include incidental acts." Quantity means those acts which are "so continuous and sufficient to be general or habitual." In combined form ... the acts of the corporation must be distinguished: those in "aid of a main purpose" are collateral and incidental, while "those necessary to its existence" are "direct."

*Purcell,* 525 Pa. at 244, 579 A.2d at 1285 (citations omitted) (quoting *Shambe v. Delaware and Hudson Railroad Company,* 288 Pa. 240, 135 A. 755 (1927)). In further refinement of these principles, the Supreme Court has stated that the mere solicitation of business within a certain county does not render venue there appropriate. *Id.* at 247, 579 A.2d at 1287.

 Applying these principles to this case, the proper disposition is clear. First, in examining the "quality" of Camelback's acts in Philadelphia County, we see that they consist almost exclusively of advertisement, aimed at the solicitation of business. Of the eight alleged business contacts by Camelback in Philadelphia that appellants rely on, six of them are pure advertisement and promotional activity. These are not enough to sustain venue in Philadelphia under the clear mandate of *Purcell.*[2] Even aside from the

---

**2.** Appellants argue at great length that Camelback's business is somehow peculiarly dependent on the solicitation of business in Philadelphia and, therefore, that we should deem Camelback's solicitation of business there to be enough to constitute the regular conduct of business. We disagree. There is nothing in this record to show that

inadequate quality of these acts, we note that Camelback's solicitation of business in Philadelphia is sporadic. They have not directly advertised in the media there in years and their distribution of brochures there is sporadic. Thus, the quantity of these acts is equally insufficient.

As to the two other grounds for venue asserted by appellants, i.e., the fact that a Philadelphia tour company regularly sends its customers to Camelback and the fact that Philadelphia residents ski at Camelback, we equally find that these assertions are insufficient to support venue in Philadelphia. Although certain Philadelphia residents are season pass holders at Camelback, the evidence of record reveals that these passes are not issued in Philadelphia, but rather at Camelback itself, and the number of Philadelphia season pass holders is extremely small in relation to the total number of season passes sold.

As to Camelback's relationship with Eastern Tours, we must agree with the trial court's characterization of that relationship as "tenuous." First, we note that the relationship is not in any sense a formal one. Camelback and Eastern have not been parties to a written contractual arrangement since 1983. Moreover, since Camelback does not operate a hotel or provide any type of lodging, Eastern does not actually "book" travellers with Camelback. Rather, Eastern independently arranges ski tours to the Poconos and makes reservations for its customers to stay at any one of a number of hotels in the Poconos. Eastern also suggests to these travellers that Camelback is one ski area, among others, that they might wish to patronize. Some of

Camelback's sporadic solicitation of business in Philadelphia was at all essential to its business. In fact, the great majority of Camelback's skiers come from New Jersey and New York. While solicitation of business in Philadelphia may well be "in aid of a main purpose" of Camelback's business, i.e., obtaining skiing customers, it is not essential and necessary to its business. *See Purcell, supra.* As the Supreme Court pointed out in *Shambe v. Delaware & Hudson Railroad Co.,* 288 Pa. 240, 248, 135 A. 755, 759 (1927), while solicitation of business may well further the interests of the corporation, it in itself does not constitute "doing business." It is the latter that is essential to the corporation's existence, not the former.

these customers will ski at Camelback, purchasing their ski passes at Camelback (in Monroe County) when they arrive there, and others will not.[3] The trial court determined, with adequate support in the record, that only five percent of Eastern's customers are from Philadelphia and some of these may not end up skiing at Camelback. The record also reveals that less than one percent of Camelback's business consists of skiers sent by Eastern.

Under these facts, it is clear that Camelback's dealings with Eastern do not even approach the regular conduct of business in Philadelphia that Rule 2179 requires. The quality of Camelback's actions in sending brochures to Eastern and quoting them prices can by no stretch of the imagination be considered anything more than solicitation. The actual sale of passes and provision of services to those persons participating in Eastern tours occurs at Camelback itself, not in Philadelphia. Moreover, the percentage of business generated for Camelback by Eastern is far too small to qualify as "general or habitual". Thus, the quantity requirement is similarly not met.

The order of the trial court is affirmed.

---

[3]. Occasionally, an Eastern Tours customer will not pay for his Camelback ski pass at Camelback. In these situations, Eastern will collect the amount due from the customer and forward a check for that amount to Camelback from Philadelphia. We do not find this fact, which appellants stress, at all indicative of a regular course of business by Camelback in Philadelphia.