J-E01001-20

2021 PA Super 37

| | | |
|---|---|---|
| RONALD SCOTT HANGEY AND ROSEMARY HANGEY H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | No. 3298 EDA 2017 |
| HUSQVARNA PROFESSIONAL PRODUCTS, INC., HUSQVARNA GROUP, HUSQVARNA U.S. HOLDING, INC., HUSQVARNA AB, AND TRUMBAUER'S LAWN AND RECREATION, INC. | : | |

Appeal from the Order September 7, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 1015  March Term, 2017

BEFORE:  PANELLA, P.J., STABILE, J., DUBOW, J., KUNSELMAN, J.,
NICHOLS, J., MURRAY, J., McLAUGHLIN, J., KING, J., and
McCAFFERY, J.

OPINION BY McLAUGHLIN, J.:                    **FILED: MARCH 8, 2021**

Ronald Scott Hangey and Rosemary Hangey, husband and wife, appeal from the order sustaining preliminary objections to venue in Philadelphia County and transferring the case to Bucks County. We conclude the trial court abused its discretion in finding that the contacts of Husqvarna Professional Products, Inc. ("HPP") with Philadelphia did not satisfy the quantity prong of the venue analysis. We therefore reverse.

The trial court summarized the factual and procedural history of the case:

[The Hangeys] commenced this action on March 13, 2017 by filing a Complaint. The Amended Complaint, filed April 10, 2017, alleges that in May 2013, Plaintiff Ronald Hangey purchased a Husqvarna riding lawnmower from Defendant Trumbauer's Lawn and Recreation, Inc. in Quakertown, Bucks County. On August 5, 2016, Ronald Hangey was maimed when he fell off his lawnmower and the lawnmower ran over his legs while the blades were still engaged; the accident occurred at [the Hangeys'] property in Wayne County. The Amended Complaint named five defendants—Husqvarna Professional Products, Inc. ["HPP"], Husqvarna Group, Husqvarna U.S. Holding, Inc., Husqvarna AB, and Trumbauer's Lawn and Recreation, Inc.—and sounds in negligence, strict liability, and loss of consortium.

All Defendants filed Preliminary Objections. Defendants Husqvarna U.S. Holdings, Inc. and Husqvarna AB filed Preliminary Objections which, *inter alia*, challenged personal jurisdiction. Defendants [HPP], Husqvarna Group, and Trumbauer's Lawn and Recreation, Inc., filed Preliminary Objections arguing, inter alia, improper venue. [The trial court] permitted the parties to take discovery relevant to the issues of personal jurisdiction and venue.

[The Hangeys'] venue-related discovery revealed the following. Husqvarna Group is a nonexistent entity that acts as a marketing device for a number of Husqvarna-branded corporate entities, including [HPP]. Deposition of John Stanfield, 55:14-56:9 (August 30, 2017). John Trumbauer, sole shareholder of Defendant Trumbauer's Lawn and Recreation, Inc., produced an affidavit in which he averred Defendant Trumbauer's Lawn and Recreation, Inc.'s principal place of business was in Quakertown, PA, that Philadelphia did not fall within their target market area, and they did not regularly conduct business in Philadelphia. Defendant Trumbauer's Lawn and Recreation, Inc.'s Preliminary Objection at Ex. "B." [HPP] is a Delaware corporation with a principal place of business located in Charlotte, North Carolina. **See** Defendants' Ex. "C" Affidavit of Jordan Baucom. In 2016, [HPP] had approximately $1.4 billion in sales revenue in the United States, of which $75,310.00 came from direct sales in Philadelphia County. **See** [HPP's] monetary sales data from 2014-2016, submitted to the Court under Seal pursuant to the Order dated September 12, 2017. Of the $75,000 in sales made

in Philadelphia in 2016, roughly $69,700 came from a single Husqvarna authorized dealer, DL Electronics, Inc. *Id.* Approximately 0.005% of [HPP's] 2016 United States sales revenue resulted from direct sales in Philadelphia County. Sales data from 2014 and 2015 is substantially similar, with approximately 0.005% of Husqvarna's annual United States sale revenue resulting from direct sales within Philadelphia County. *Id.* These sales figures do not include the revenue generated by selling Husqvarna products at "big box" retailers such as Home Depot, Lowe's, or Sears. In the case of "big box" retailers, John Stanfield, the corporate representative for [HPP], testified that [HPP] delivers its products to the retailers' distribution centers, none of which are located in Philadelphia County. *See e.g.* Stanfield Dep. 31:17-34:20 (testifying that sales to Lowe's would be delivered to the Lowe's distribution center in either Pottsville or Pittstown, Pennsylvania). Once the Husqvarna products are delivered to the retailers' distribution centers, the retailers retain sole discretion as to where the products will be offered for sale, including stores located in Philadelphia County. *See* Affidavit of John Stanfield at 19.

Following oral argument, [the trial court] dismissed Defendants Husqvarna U.S. Holdings, Inc. and Husqvarna AB due to want of personal jurisdiction and transferred the case against Defendants [HPP], Husqvarna Group, and Trumbauer's Lawn and Recreation, Inc. to Bucks County because venue was improper in Philadelphia County. [The Hangeys] filed a timely notice of appeal challenging this Court's finding of improper venue; however, they did not appeal the dismissal of Defendants Husqvarna U.S. Holdings, Inc. and Husqvarna AB. *See* Notice of Appeal, docketed September 26, 2017 (stating Plaintiffs appeal from the orders "transferring venue of this matter to the Court of Common Pleas of Bucks County, Pennsylvania").

Trial Court Opinion, filed Mar. 2, 2018, at 1-3 ("1925(a) Op.").

In finding venue in Philadelphia was not proper, the trial court found HPP's contacts satisfied the quality prong of the venue analysis, but did not satisfy the quantity prong. The court reasoned that only 0.005% of HPP's national revenue came from sales in Philadelphia and concluded that because

- 3 -

this amount was "*de minimis*," HPP's contact with Philadelphia was not general and habitual. *Id.* at 6.

The Hangeys raise the following issue on appeal:

> Did the trial court err as a matter of law, and thereby abuse its discretion, in holding that [HPP] does not regularly conduct business in Philadelphia County, merely because the overwhelming majority of its sales in the United States have occurred elsewhere, thereby overlooking the undisputed continuous, ongoing, and regularly recurring sales of Husqvarna consumer products in Philadelphia County?

Hangeys' Br. at 8.

A panel of this court reversed the trial court's order. We granted Husqvarna's petition for re-argument and ordered the parties to brief an additional issue: "Whether the *en banc* Panel should specifically adopt or overrule prior appellate decisions involving the quantity prong of the venue analysis?" Order, filed July 9, 2019.

We review an order granting or denying preliminary objections asserting improper venue for abuse of discretion. *Zampana-Barry v. Donaghue*, 921 A.2d 500, 503 (Pa.Super. 2007). "A [p]laintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper." *Fritz v. Glen Mills Schools*, 840 A.2d 1021, 1023 (Pa.Super. 2003) (quoting *Jackson v. Laidlaw Transit, Inc. & Laidlaw Transit PA, Inc.*, 822 A.2d 56, 57 (Pa.Super. 2003)). "However, a plaintiff's choice of venue is not absolute or unassailable." *Id.* (quoting *Jackson*, 822 A.2d at 57). "[I]f there exists any proper basis for the trial court's decision to grant

- 4 -

the petition to transfer venue, the decision must stand." **Krosnowski v. Ward**, 836 A.2d 143, 146 (Pa.Super. 2003) (*en banc*) (quoting **Estate of Werner v. Werner**, 781 A.2d 188, 190 (Pa.Super. 2001)).

We must determine whether the trial court abused its discretion in finding that venue as to HPP was improper in Philadelphia.[1] If venue is proper as to HPP, then the Hangeys may maintain their "action to enforce . . . joint and several liability against" not only HPP, but also Husqvarna Group and Trumbauer's Lawn and Recreation, Inc. Pa.R.C.P. 1006(c)(1) ("an action to enforce a joint or joint and several liability against two or more defendants . . . may be brought against all defendants in any county in which the venue may be laid against any one of the defendants").

Rule 2179 of the Pennsylvania Rules of Civil Procedure provides that venue is proper against a corporation or similar entity in a county where it "regularly conducts business." Pa.R.C.P. 2179(a)(2). When determining whether venue is proper, "each case rests on its own facts," **Purcell v. Bryn Mawr Hosp.**, 579 A.2d 1282, 1286 (Pa. 1990), and "[t]he question is whether the acts are being 'regularly' performed within the context of the particular business." **Monaco v. Montgomery Cab Co.**, 208 A.2d 252, 256 (Pa. 1965). Further, in the venue context, "regularly" does not mean "principally," and a defendant "may perform acts 'regularly' even though these acts make up a

---

[1] The Hangeys do not challenge the trial court finding that venue in Philadelphia is not proper as to Husqvarna Group and Trumbauer's Lawn and Recreation, Inc.

small part of its total activities." ***Canter v. Am. Honda Motor Corp.***, 231 A.2d 140, 142 (Pa. 1967).

In determining whether venue is proper under this rule, courts "employ a quality-quantity analysis." ***Zampana-Barry***, 921 A.2d at 503. "The term 'quality of acts' means those directly, furthering, or essential to, corporate objects; they do not include incidental acts." ***Monaco***, 208 A.2d at 256 (quoting ***Shambe v. Delaare & Hudson R.R. Co.***, 135 A. 755, 757 (Pa. 1927)). To satisfy the quantity prong of this analysis, acts must be "sufficiently continuous so as to be considered habitual." ***Zampana-Barry***, 921 A.2d at 504.

Pennsylvania appellate courts have often considered the percentage of overall business a defendant company conducts in a county to determine if the quantity prong was met. In ***Canter***, the Supreme Court found that a company whose employees drove cars into Philadelphia "to demonstrate cars and to consummate sales" met the quality test for venue, and that the contacts also met the quantity test where one to two percent of the company's gross sales occurred in Philadelphia. 231 A.2d at 143. In ***Canter***, the company had gross sales of 3.7 million in 1964 and 4.1 million in 1965. ***Id.*** at 141. In ***Monaco***, the Supreme Court found that a taxicab company based in Montgomery County conducted regular business in Philadelphia where five to ten percent of its business was from passengers it took into Philadelphia. 208 A.2d at 256. It reasoned that the cab company's acts of driving into Philadelphia and collecting fares were regularly performed. ***Id.*** Further, in

*Zampana-Barry*, this Court found venue proper in Philadelphia where a law firm based in Delaware County derived three to five percent of its income from cases litigated in Philadelphia. 921 A.2d at 506.

As these cases establish, courts often consider whether the percentage of a defendant's business is sufficient to constitute "habitual" contact. However, no court has stated that the percentage of a defendant's business is the sole evidence relevant to the "quantity" analysis. Rather, courts must determine whether all the evidence presented, including the scope of the defendant's business, viewed in the context of the facts of the case, establish that a defendant's contacts with the venue satisfy the quantity prong. *See Mathues v. Tim-Bar Corp.*, 652 A.2d 349, 351 (Pa.Super. 1994) (finding trial court did not abuse discretion in finding quantity prong not satisfied where evidence established only one or two sales occurred in county); *Monaco*, 208 A.2d at 256 (noting "[t]he question is whether the acts are being 'regularly' performed within the context of the particular business").

Where this Court concluded that conducting a small percentage of a business in a venue did not satisfy the **quantity** prong, the Court's core finding was that the contacts failed the **quality** prong of the venue test and the cases often addressed defendants who were small and/or local companies, not multi-billion-dollar corporations. For example, in *Singley v. Flier*, 851 A.2d 200, 202-03 (Pa.Super. 2004), we found that the contacts that the plaintiff alleged Villanova University had with Philadelphia—three graduate courses offered in Philadelphia, practical experience for nursing students in

Philadelphia hospitals, a history course entitled "Tours of Philadelphia," and volunteer and athletic opportunities—did not satisfy the quality prong of the venue analysis. We also found that the three graduate courses also failed the quantity prong "when viewed in light of the University's entire academic program, which includes several graduate degrees, as well as a law school." *Id.*

Further, in ***PECO Energy Co. v. Philadelphia Suburban Water Co.***, this Court found that Philadelphia Suburban Water Company's contacts with Philadelphia, which included approximately one mile of pipeline running through Philadelphia and a one-time purchase of water from Philadelphia, were "minimal and incidental, at best." 802 A.2d 666, 670 (Pa.Super. 2002). We concluded that the contacts were not essential to defendant's business and were "far less in quantity, as well as quality, than the contacts cited" in prior cases. *Id.* at 671. Further, in ***Battuello v. Camelback Ski Corp.***, 598 A.2d 1027, 1029-30 (Pa.Super. 1991), this Court discussed the plaintiff's claim that venue in Philadelphia was proper due to Camelback Ski Corporation's relationship with eastern Tours, which transported Philadelphians to Camelback. We concluded the relationship was "tenuous," noting that Cambelback's sending of brochures and quoting prices did not meet the quality prong of the venue analysis, Philadelphians purchased tickets only after they arrived at Camelback, and the business generated, which was less than one percent of Cambelback's business, was "far too small to qualify as 'general or habitual.'" *Id.* at 1030.

The percentage of a company's overall business that it conducts in a given county, standing alone, is not meaningful and is not determinative of the "quantity" prong. Each case turns on its own facts, and we must evaluate evidence of the extent of a defendant's business against the nature of the business at issue. A small or local business may do all of its work in just a few counties or even a single one, while a large business may span the entire nation. Indeed, the percentage of sales a multi-billion-dollar company makes in a particular county will almost always be a tiny percentage of its total sales. Courts thus should not consider percentages in isolation. Rather, courts must consider all of the evidence in context to determine whether the defendant's business activities in the county were regular, continuous, and habitual.

Here, HPP is a multi-billion-dollar corporation. It had at least one authorized dealer located in Philadelphia to which it delivered products for sale. Although HPP's sales through authorized dealers in Philadelphia constituted only 0.005% of HPP's national sales, the dollar figure of those Philadelphia sales in 2016 was $75,310.[2] The number and dollar figure of sales in Philadelphia, and the fact that HPP has an authorized dealer in Philadelphia to sell its products, is relevant to the determination of whether HPP's contacts with Philadelphia satisfied the "quantity" prong of the venue analysis.

---

[2] Ronald and Rosemary Hangey presented evidence that additional sales occurred through Lowe's stores located in Philadelphia. Although there was no evidence as to the quantity of sales at Lowe's, there was evidence that such sales occurred. However, as we conclude that venue is proper without reference to the sales from Lowe's or similar stores, we need not determine whether such sales can be considered here.

Therefore, we conclude the trial court erred in relying almost exclusively on evidence of the percentage of defendant's business that occurred in Philadelphia when addressing the quantity prong.

Further, based on the totality of the evidence, HPP's contacts satisfied the quantity prong of the venue test. Its contacts with Philadelphia – including having an authorized dealer in Philadelphia, and selling $75,310 worth of products through that dealer in 2016 in Philadelphia – were "sufficiently continuous so as to be considered habitual." ***See Zampana-Barry***, 921 A.2d at 504.

In reaching this conclusion, we do not find it necessary to approve or disapprove of any of our prior decisions. Rather, our conclusion is based on the prior precedents of the Pennsylvania Supreme Court and consistent with those of our Court. However, as discussed above, we clarify that the percentage of sales of a corporation in a venue is but one factor to consider when determining whether the quantity prong of the venue analysis is satisfied, and such evidence must be viewed within the context of the business at issue in each case.

As for the quality prong, the trial court found there was "no question" that it was met. ***See*** 1925(a) Op. at 5. The Hangeys do not dispute that conclusion and we will not address it further.

Order reversed. Case remanded. Jurisdiction relinquished.

President Judge Panella, Judge Dubow, Judge Murray and Judge McCaffery join the opinion.

- 10 -

Judge Kunselman and Judge Nichols concur in the result.

Judge Stabile files a dissenting opinion in which Judge King joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/8/21</u>