J-E01001-20

2021 PA Super 37

| | |
|---|---|
| RONALD SCOTT HANGEY AND ROSEMARY HANGEY H/W | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| HUSQVARNA PROFESSIONAL PRODUCTS, INC., HUSQVARNA GROUP, HUSQVARNA U.S. HOLDING, INC., HUSQVARNA AB, AND TRUMBAUER'S LAWN AND RECREATION, INC. | |
| Appellees | No. 3298 EDA 2017 |

Appeal from the Order September 7, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 1015 March Term, 2017

BEFORE:  PANELLA, P.J., STABILE, J., DUBOW, J., KUNSELMAN, J.,
NICHOLS, J., MURRAY, J., and McLAUGHLIN, J., KING, J., and
McCAFFERY, J.

DISSENTING OPINION BY STABILE, J.:          **FILED: MARCH 8, 2021**

I would conclude that the trial court acted within its permissible

discretion in sustaining preliminary objections to venue in Philadelphia County.

I therefore respectfully dissent.

Our courts of appeal have explained many times that trial courts enjoy

"considerable discretion" in determining whether venue is proper, and we will

reverse only where the trial court abuses its discretion.  **Purcell v. Bryn**

**Mawr Hosp.**, 579 A.2d 1282, 1284 (Pa. 1990); **Zampana-Barry v.**

**Donaghue**, 921 A.2d 500, 503 (Pa. Super. 2007), **appeal denied**, 940 A.2d

366 (Pa. 2007). The outcome in each case depends on its own facts. ***Monaco v. Montgomery Cab Co.***, 208 A.2d 252, 256 (Pa. 1965) (***citing Shambe v. Delaware and Hudson R.R. Co.***, 135 A. 755, 757 (Pa. 1927)). Accordingly, an appellate court will not overturn the trial court's decision so long as it is reasonable in view of the facts. ***Id.***

Here, the record shows that from 2014 to 2016, approximately .005% of the United States sales revenue of Appellee Husqvarna Professional Products, Inc. ("HPP") came from direct sales in Philadelphia County. HPP also delivers products to the distribution centers of big box retailers such as Lowe's and Home Depot, but none of those distribution centers is located in Philadelphia County and HPP does not control the ultimate point of sale after it delivers its products to the big box distributors. The question presented is whether HPP "regularly conducts business" in Philadelphia County as per Rule 2179(a)(2) of the Pennsylvania Rules of Civil Procedure. The answer depends on our review of the trial court's application of a quantity/quality analysis.

Quality acts are "those directly, furthering, or essential to, corporate objects; they do not include incidental acts." ***Monaco***, 208 A.2d at 256. The trial court concluded that HPP's activities were sufficient in quality to support venue in Philadelphia County. HPP furthers its business interests by selling products directly to two Philadelphia retailers, which in turn sell those products to the public. Trial Court Opinion, 3/1/18, at 5. The parties do not dispute that HPP has quality contacts with Philadelphia County. "By 'quantity of acts'

is meant those which are so continuous and sufficient to be termed general or habitual." **Monaco**, 208 A.2d at 256. The trial court found that .005% of HPP's national sales revenue was *de minimus* and therefore of insufficient quantity. **Id.** at 6.

I believe the trial court's conclusion was reasonable, in accord with applicable case law, and therefore not an abuse of discretion. For example, in **Singley v. Flier**, 851 A.2d 200 (Pa. Super. 2004), this Court affirmed an order transferring venue from Philadelphia to Delaware County. The plaintiff slipped and fell in a parking lot on the campus of Villanova University in Delaware County. The plaintiff argued for venue in Philadelphia County based on three graduate courses Villanova conducted at the Philadelphia Naval Yard. Villanova owned no property and conducted no other activity in Philadelphia. This Court concluded that Villanova's activities in Philadelphia failed both the quality and quantity prongs of venue analysis, writing with regard to the latter that "the quantity of these contacts—three graduate level courses—is lacking when viewed in light of the University's entire academic program, which includes several graduate degrees, as well as a law school." **Id.** at 203. In other words, the trial court reasonably found *quantity* lacking where the defendant conducted a proportionately very small amount of its activity in the plaintiff's county of choice. That is precisely what the trial court considered occurred in this case on appeal.

Other cases reinforce this point and the discretion exercised by the trial court. In ***PECO Energy Co. v. Philadelphia Suburban Water Co.***, 802 A.2d 666 (Pa. Super. 2002), the plaintiff sued the defendant in Philadelphia County alleging losses stemming from water pipes that ruptured in Montgomery County. All affected water customers lived in Montgomery County. The defendant had no connection to Philadelphia County other than one mile of transmission pipeline—representing .036 percent of its piping system— passing through. ***Id.*** at 670. In 2000, defendant conducted a one-time purchase of 300,000 gallons of water from the City of Philadelphia, representing .0007% of its water purchases over ten years. ***Id.*** This Court concluded that the defendant's contacts to Philadelphia County were not essential to the furtherance of its business, and "minimal and incidental, at best." ***Id.***

In ***Battuello v. Camelback Ski Corp.***, 598 A.2d 1027 (Pa. Super. 1991), the plaintiffs sued the defendant ski resort in Philadelphia County for their son's fatal accident that occurred at the defendant's resort in Monroe County. In support of venue, the plaintiffs cited, among other things, that the defendant sent promotional brochures to residents of Philadelphia County; that the defendant advertised in Philadelphia County; and that defendant worked with a tour company in Philadelphia that regularly brought Philadelphia residents to its resort. ***Id.*** at 1028. This Court affirmed the order transferring venue to Monroe County, reasoning that solicitation of business in Philadelphia

County did not establish sufficient quality, and that the sale of business generated for the defendant by the Philadelphia-based tour company was "far too small to qualify as 'general or habitual'" and therefore did not establish sufficient quantity. *Id.* at 1030; *see also Mathues v. Tim-Bar Corp.*, 652 A.2d 349 (Pa. Super. 1994) (holding that the York County defendant's "isolated and limited" activities in Montgomery County were insufficient to support venue there).

Granting the trial court considerable discretion, as we must, and considering the authority of *Singley*, *PECO Energy*, and *Battuello*, I do not believe we can conclude the trial court's decision was unreasonable. Those cases teach that quantity is lacking where a defendant's activity in a county is insignificant in relation to its overall activity.[1] I recognize that other cases have found that venue will lie against a defendant in a county where it conducts a comparatively small amount of its business. *See Monaco*, 208 A.2d at 256 (holding that venue would lie in Philadelphia County against a

---

[1] The Majority misses the mark in distinguishing these cases because the courts in those cases found a lack of quality **and** quantity of contacts between the defendant and the forum. Majority Opinion, at 7-8. The law clearly requires both quality and quantity of contacts, and they are distinct. Under the Majority's analysis, however, prior cases finding a lack of quantity did so primarily because quality contacts were absent. Instantly, in contrast, the existence of quality contacts leads inexorably to the existence of a sufficient quantity of contacts, regardless of the fact that HPP's contacts with Philadelphia County represent a tiny fraction of its business. Thus, the Majority renders the quantity prong largely irrelevant, as quantity seemingly always follows quality in the Majority's view, which I view as an improper application of law.

defendant that conducted five to ten percent of its cab business there); ***Canter v. American Honda Motor Corp.***, 231 A.2d 140, 143 (Pa. 1967) (holding that one to two percent of a defendant's business was sufficient to establish the quantity test described in ***Monaco***); ***Zampana-Barry***, 921 A.2d at 506 (three to five percent of a law firm's legal services conducted in Philadelphia supported venue in Philadelphia County).  I also recognize that the jurisprudential law in this area is lacking in clarity.  ***See Zampana-Barry***, 921 A.2d at 506-09 (Klein, J. concurring).  I do not believe, however, that any of the foregoing cases support the Majority's decision to overrule the trial court's discretion.  Rather, I believe that our appellate standard of review—which requires us to afford the trial courts considerable discretion and directs us not to overturn any reasonable result—is a product of the inherent difficulty in articulating precise standards governing a quality and quantity analysis. Put simply, the lack of precise alignment in our case law in this area may be explained by the broad discretion given our trial courts to decide these issues.

Moreover, "[a] finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion." ***Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1123 (Pa. 2000).  Rather, "an abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." ***Id.*** at 1124.  "Where the record adequately supports the trial court's

reasons and factual basis, the court did not abuse its discretion." ***Id.*** Thus, the law recognizes that different judges might consider similar facts and reach different results, with neither committing an abuse of discretion. Some degree of uncertainty in the law is therefore unavoidable, and this brings with it the inherent difficulty in reconciling the results of all of our prior precedent on this issue.

In my view, the Majority reverses the trial court in this case because the Majority would have reached a different result. Nothing in the Majority's Opinion supports a conclusion that the trial court overstepped the bounds of its considerable discretion in applying a relatively imprecise body of law to the facts of this case. Under our existing jurisprudence, all of which the Majority leaves intact, trial courts have discretion to assign great weight—even decisive weight—to the fact that a defendant conducts a vanishingly small percentage of its business in the plaintiff's chosen forum. In contrast with existing precedent, the Majority has all but forbidden trial courts to transfer venue on that basis. If five one-thousandths of a percent is sufficient to establish quantity, it is difficult to imagine a percentage that is too small.

The Majority reasons that its result is warranted, at least in part, because HPP is a large, multi-billion dollar company conducting business throughout the United States and the percentage of its sales revenue in any

county is likely to be a tiny percentage of its overall sales revenue.[2]  Majority Opinion at 9.  I am willing to assume that this is true, but I believe it is entirely irrelevant to question before us.  Faithful application of the quantity analysis under existing jurisprudence will not leave plaintiffs without a forum in which to pursue claims against large companies.  Rather, it will simply restrict the choice of forum according to the well-established criteria of our Rules of Civil Procedure.

For all of the foregoing reasons, I would not disturb the trial court's exercise of discretion in transferring venue in this case from Philadelphia to Bucks County.

I respectfully dissent.

Judge King joins the dissenting opinion.

_____

[2]  As noted above, HPP does not direct the distribution or sales of its products by big box retailers.  Moreover, Appellants failed to create a record as to sales of HPP products at big box retailers in Philadelphia County.