J-A33041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PAMELA AND JAMES GORDON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| JFBB SKI AREAS, INC. | |
| Appellee | No. 1454 EDA 2014 |

Appeal from the Order Entered on April 28, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No.: November Term, 2013 No. 1048

BEFORE: LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.: **FILED FEBRUARY 13, 2015**

Pamela and James Gordon appeal from the order of April 28, 2014, sustaining the preliminary objections of JFBB Ski Areas, Inc. ("JFBB") as to venue in Philadelphia County and transferring the underlying matter to Carbon County. After careful review, we affirm.

On January 21, 2013, Pamela Gordon broke her leg while snow tubing at Jack Frost Mountain in Carbon County. The trial court set forth the procedural history of the case as follows:

> On November 12, 2013, a [c]omplaint was filed by plaintiffs Pamela Gordon and James Gordon against defendant Jack Frost Ski Area, Peak Resort, Jack Frost Mountain Company, Jack Frost Mountain, Inc., Blue Ridge Real Estate Company, and Blue Ridge Realty, Inc. On December 24, 2013, the defendants together brought [p]reliminary [o]bjections, including an objection to

---

[*] Retired Senior Judge assigned to the Superior Court.

venue that asks the [c]ourt to move the case from the Court of Common Pleas of Philadelphia County to the Court of Common Pleas of Carbon County, where [they alleged that] venue properly lies. [The Gordons] filed a Supplemental Memorandum in Opposition to Preliminary Objections on January 17, 2014. On January 31, 2014, defendants filed a Reply in Support of Preliminary Objections and a Reply to Plaintiffs' New Matter Asserted in its Response to Preliminary Objection[s]. Also on January 31, 2013, an [o]rder scheduled an argument and evidentiary proceeding relevant to the question of venue for April 14, 2014 and authorized the parties to conduct discovery.

On March 14, 2014, [the Gordons] filed a Motion for Leave of Court to Join New Defendant [JFBB]. On March 18, 2014 defendants filed an Answer to Plaintiffs' Motion for Leave of Court to Join New Defendant, [JFBB], stating that they [did] not oppose the motion. This motion was granted by order dated April 7, 2014. [The Gordons] filed a Memorandum in Supplement to Plaintiffs' Opposition to Defendants' Preliminary Objections on April 10, 2014. Defendants filed a Supplemental Brief in Support of Defendants' Preliminary Objections on April 11, 2013. On April 14, 2014, the [Gordons] and defendants stipulated that "JFBB Ski Areas, Inc. shall be substituted for Jack Frost Ski Area [and] all remaining Defendants are dismissed[,]" and a hearing on venue arguments was held and evidence was accepted. On April 22, 2014,[1] it was ordered that the preliminary objections are sustained as to venue only and the case transferred to the Court of Common Pleas of Carbon County. On May 2, 2014 the [Gordons] appealed from the order granting [the] Motion to Transfer Venue.

Trial Court Opinion ("T.C.O."), 7/15/2014, at 1-2 (footnotes and record citations omitted). The trial court did not order the Gordons to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its Pa.R.A.P. 1925(a) opinion on July 15, 2014.

---

[1] The order on appeal, dated April 22, 2014, was not docketed until April 28, 2014.

The Gordons raise two questions for our review:

1.     Whether the trial court erred when it concluded that [JFBB] does not regularly conduct business in Philadelphia pursuant to Pa.R.C.P. 2179 when [JFBB]'s activities constitute more than advertising and soliciting, including regularly sending employees into Philadelphia County to promote the mountain, and specifically, the ability to purchase lift tickets though its website?

2.     Whether the trial court erred when it concluded that the availability of an interactive website that allows customers to purchase lift tickets online and is promoted by an employee of [JFBB] with a physical presence in Philadelphia County, and when roughly 5% of its internet sales are made to Philadelphia residents[,] was not sufficient advertising and solicitation to constitute that [JFBB] regularly conducts business in Philadelphia County pursuant to Pa.R.C.P. 2179?

Gordons' Brief at 4.

Both questions presented by the Gordons contest the trial court's finding that venue was not appropriate in Philadelphia County. Specifically, the Gordons contend that the trial court erred, pursuant to Pa.R.C.P. 2179, "when it concluded, as a matter of law, that JFBB's only business conducted in Philadelphia County is advertising and the availability of a website, and that JFBB's conduct was not sufficient to establish proper venue in Philadelphia County." *Id.* at 11. We disagree.

> In reviewing a trial court's ruling transferring venue, we will not disturb the ruling if the decision is reasonable in light of the facts. An abuse of discretion occurs when the trial judge overrides or misapplies the law, or exercises judgment in a manifestly unreasonable manner, or renders a decision based on partiality, bias, or ill will. . . .
>
> **Harris v. Brill**, 844 A.2d 567, 570 (Pa. Super. 2004) (citations and internal quotation marks omitted).

Pa.R.C.P. 2179 governing venue provides in pertinent part as follows:

(a) Except as otherwise provided . . . , a personal action against a corporation or similar entity may be brought in and only in

(1) the county where its registered office or principal place of business is located;

(2) a county where it regularly conducts business;

(3) the county where the cause of action arose;

(4) a county where a transaction or occurrence took place out of which the cause of action arose[.]

Pa.R.C.P. 2179(a)(1)-(4).

*McMillan v. First Nat'l Bank of Berwick*, 978 A.2d 370, 371-72 (Pa. Super. 2009). Here, the Gordons contest the trial court's venue decision under Pa.R.C.P. 2179(a)(2), arguing that Philadelphia is "a county where [JFBB] regularly conducts business." Gordons' Brief at 11.

"As to the matter of whether [an a]ppellee regularly conducts business in [a c]ounty, this Court has held that . . . 'each case rests on its own facts.'" *McMillan*, 978 A.2d at 372-73.

A plaintiff's choice of forum should be "given great weight[,] and a defendant has the burden in asserting a challenge to the plaintiff's choice of venue." *Masel v. Glassman*, 689 A.2d 314, 316 (Pa. Super. 1997) (quoting *Shears v. Rigley*, 623 A.2d 821, 824 (Pa. Super. 1993)). . . . Furthermore, it is well-settled that "corporations have a constitutional right to seek a change of venue." *Purcell v. Bryn Mawr Hosp.*, 579 A.2d 1282, 1284 (Pa. 1990).

*PECO Energy Co. v. Phila. Suburban Water Co.*, 802 A.2d 666, 668-69 (Pa. Super. 2002) (citations modified). "[I]f there exists any proper basis

- 4 -

for the trial court's decision to grant the petition to transfer venue, the decision must stand." *Kubik v. Route 252, Inc.*, 762 A.2d 1119, 1123 (Pa. Super. 2000).

> In determining whether a corporation regularly conducts business [in a given county], we have held that "this court must focus on the nature of the acts the corporation allegedly performs in that county; those acts must be assessed both as to their quantity and quality." *Masel*, 689 A.2d at 317 (citations omitted). Our Supreme Court has stated that the "quality of acts" means "those directly, furthering[,] or essential to, corporate objects; they do not include incidental acts." Quantity means those acts which are "so continuous and sufficient to be general or habitual." . . . The acts of the corporation must be distinguished: those in "aid of a main purpose" are collateral and incidental, while "those necessary to its existence" are "direct." *Purcell*, 579 A.2d at 1285 (quoting *Shambe v. Del. & Hudson R.R. Co.*, 135 A. 755, 755 (Pa. 1927)).

*PECO Energy Co.*, 802 A.2d at 669 (citations modified). In *PECO Energy Co.*, this Court described the manner in which the quantity/quality analysis is applied to the individual facts of a case:

> For example, in *Purcell*, *supra*, our Supreme Court analyzed the question of whether certain contacts and contractual affiliations between Bryn Mawr Hospital, located in Montgomery County, and Philadelphia County were sufficient to vest venue in Philadelphia County in a medical malpractice action. The Court examined the hospital's connection to residency programs in Philadelphia County, recruitment and employment of medical residents by Bryn Mawr Hospital from Philadelphia teaching hospitals, purchases of goods and services from businesses within Philadelphia County for furtherance of its business in Montgomery County, maintenance of advertisements in the Philadelphia County telephone directories, and placement of advertisements in the Philadelphia Inquirer. Despite these various affiliations, the Court concluded that Philadelphia was an improper venue for a negligence action filed by plaintiffs against

Bryn Mawr Hospital and the medical personnel who cared for plaintiffs' deceased infant daughter. ***Purcell***, 579 A.2d at 1287.

More recently, in ***Masel***, *supra*, this Court, following ***Purcell***, determined that the plaintiff in a medical malpractice action demonstrated insufficient contacts between the defendant hospital and Philadelphia County for venue to lie there, despite the hospital's extensive advertising in Philadelphia newspapers and directories and various extensive contracts with Philadelphia vendors and institutions. There, we held that the nature of the contacts was incidental in nature and not directly tied to furthering the main purpose of the corporation. ***Masel***, 689 A.2d at 318.

***PECO Energy Co.***, 802 A.2d at 670-71 (citations modified); ***see id.*** (concluding that "[PSWC's] contacts are minimal and incidental, at best. Moreover, we do not find that those contacts are essential to the furtherance of PSWC's business in any significant way. In comparing the nature of the contacts of PSWC to Philadelphia County in this case, we discern them to be far less in quantity, as well as quality, than the contacts cited in ***Purcell*** and ***Masel***.").

In the instant case, the trial court found as follows:

[JFBB] is a Missouri Corporation with a registered address at 1 Jack Frost Mountain Road, Blakeslee, Pennsylvania 18610, Carbon County, Pennsylvania [*sic*]. JFBB does not own property in Philadelphia County, has never applied for a business license in Philadelphia, and does not purchase any products from vendors in Philadelphia. JFBB does not sell merchandise, apparel or ski lift tickets in Philadelphia.

T.C.O. at 3.

Heather Schiffbauer, JFBB's director of marketing, testified at a deposition that, for the last three years, JFBB has offered a promotion on

CBSPhilly.com, a Philadelphia-based sports talk radio station, for a voucher to be redeemed for half-priced lift and tubing tickets. Deposition of Heather Schiffbauer, 3/13/2014, at 9-10. Roughly five percent of the sales from that promotion come from Philadelphia County. *Id.* at 13. JFBB advertises in Philadelphia in the form of outdoor billboards, a Dunkin' Donuts coupon promotion, and by placing advertisements in Philly Current, a local trade magazine. *Id.* at 17, 37, 39. JFBB runs advertisements on Flyers radio, which includes a January giveaway promotion; JFBB also staffs two kiosks outside the Wells Fargo Center during Flyers games. *Id.* at 39.

In addition, JFBB is a sponsor for the Wing Bowl in Philadelphia, has previously sponsored the Temple Snowboard Club, and advertises at Temple football games. At the Wing Bowl, JFBB sponsors a section where it gives away T-shirts, and JFBB appears on the screen as a sponsor. *Id.* at 19. JFBB participates annually in Philly Campus, a program which introduces new students to the Philadelphia area. *Id.* For the last two years, JFBB has set up a booth in front of the Philadelphia Art Museum at Philly Campus events to hand out promotional gifts, brochures, and rate cards, but does not make any sales. *Id.* at 20-21.

Furthermore, JFBB sets up a booth for the radio station WRRF 104.5's winter festival in Philadelphia. *Id.* at 20. As described by Schiffbauer, "we set up a tent and, again, give away T-shirts, have games there, so it's more of an interactive event. They have a free concert, have a couple bands that perform there." *Id.* at 26. At this event, JFBB staff hands out rate cards

and magazines with the website on them. *Id.* at 26-27. Schiffbauer also noted that JFBB has previously offered group rates for charter buses, but not specifically for the Philadelphia area. *Id.* at 29.

As to whether business is conducted in Philadelphia County, Schiffbauer stated that lift tickets are either purchased on the website, which is administered through a California company, or purchased directly at Jack Frost Mountain in Carbon County. Because some customers pay cash for their lift tickets, not all purchases are tracked by location. However, out of 34,000 purchases tracked, roughly 1,600, or 4.7%, were from Philadelphia County. *Id.* at 46-47. When asked if JFBB purchases anything in Philadelphia "[o]ther than payments made to get your advertisements on these various media that we've talked about for marketing purposes," Schiffbauer answered "no." *Id.* at 54. Likewise, Mark Daubert, general manager at JFBB, stated in his deposition that none of JFBB's vendors is Philadelphia corporation. *See* Deposition of Mark Daubert, 3/13/2014, at 16.

We begin by assessing "the nature of the acts [that JFBB] allegedly performs in [Philadelphia C]ounty." *PECO Energy Co.*, 802 A.2d at 669. JFBB advertises in Philadelphia County in trade magazines, billboards, with coupon and voucher programs, and by sponsoring community events in Philadelphia County where promotional materials are distributed. However, no actual sales of lift tickets take place at these events or otherwise in Philadelphia County. The actual sale of lift tickets occurs on the JFBB

website, with money transferred through a third-party bank, or on-site at the resort in Carbon County. Of those sales, to the extent they were tracked, fewer than five percent were made by Philadelphia County residents. Likewise, following a radio promotion, around five percent of sales from that promotion came from Philadelphia.

Similarly, in **Kubik**, *supra*, a panel of this Court assessed whether a restaurant's sale of gift certificates in Philadelphia County constituted regularly-conducted business for purposes of establishing venue:

> [The r]estaurant's main purpose is not to sell gift certificates, but to sell food in its establishment. Certainly the sale of gift certificates is not "necessary to its existence," but rather serves to "aid . . . [its] main purpose." Accordingly, the sale of gift certificates is merely incidental to its regular business. Moreover, there is no evidence that such sales occur regularly. Thus, the sale of gift certificates is a collateral act, and this is simply not enough to constitute regularly conducting business in Philadelphia County.

**Kubik**, 762 A.2d at 1125-26. Here, the main purpose of JFBB is to own and operate a ski resort. Running promotions and distributing coupons and vouchers are incidental to JFBB's regular business. Unlike in **Kubik**, where the gift certificates were purchased in Philadelphia, in this case, Philadelphia residents who wish to use vouchers and coupons to buy lift tickets must do so through JFBB's website or at Jack Frost Mountain, not in Philadelphia County. Thus, these acts are even less direct than the sale of gift certificates in deemed insufficient to support venue in **Kubik**.

Furthermore, the lift ticket sales coming from Philadelphia residents are insufficient to justify venue. This contact is even less significant than in *Masel*, *supra*, in which this Court determined that there were insufficient contacts between a hospital and Philadelphia County to establish venue, "despite the hospital's extensive advertising in Philadelphia newspapers and directories and various extensive contracts with Philadelphia vendors and institutions. There, we held that the nature of the contacts was incidental in nature and not directly tied to furthering the main purpose of the corporation." *PECO Energy Co.*, 802 A.2d at 670-71 (discussing *Masel*, 689 A.2d at 318). Specifically, in *Masel*, the Court found that twenty percent of the hospital's gross revenue came from Philadelphia third-party payers, and three percent directly from Philadelphia residents. *Masel*, 689 A.2d at 318. Nonetheless, the Court rejected the venue claim despite "acceptance of a portion of its income from residents of Philadelphia County." *Id.* (citing *Purcell*, 579 A.2d at 1285). Here, fewer than five percent of ticket sales come from Philadelphia residents, and JFBB has no vendor contracts in Philadelphia.

Thus, despite the non-negligible **quantity** of promotional activity directed toward Philadelphia County, those contacts were related to advertising, rendering their **quality** "collateral and incidental" to the main purpose of JFBB, which is to own and operate a ski resort in Carbon County. *Purcell*, 579 A.2d at 1285. The record does not demonstrate that any business activities "necessary to [the] existence" of operating Jack Frost

Mountain ever took place in Philadelphia.  **Kubik**, 762 A.2d at 1125-26.

"Mere solicitation of business in a particular county does not amount to conducting business."  **Purcell**, 579 A.2d at 1287.  Accordingly, the trial court did not err or abuse its discretion in concluding that JFBB's contacts in Philadelphia County were insufficient to justify venue.  **McMillan**, 978 A.2d at 371-72.  The Gordons' issues do not merit relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/13/2015