J-A08034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THEODORE TROSETH, AN INDIVIDUAL AND CHERYL TROSETH, AN INDIVIDUAL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARSON HELICOPTERS HOLDINGS CO., INC., CARSON HELICOPTERS, INC. AND HELIGROUP FIRE, LLC | : | No. 249 EDA 2022 |
| | : | |
| APPEAL OF: CARSON HELICOPTERS HOLDINGS CO., INC., CARSON HELICOPTERS, INC. | : | |

Appeal from the Order Entered January 13, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210301222

| | | |
|---|---|---|
| THEODORE TROSETH, AN INDIVIDUAL AND CHERYL TROSETH, AN INDIVIDUAL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARSON HELICOPTERS HOLDINGS CO., INC., CARSON HELICOPTERS, INC. AND HELIGROUP FIRE, LLC | : | No. 250 EDA 2022 |
| | : | |
| APPEAL OF: HELIGROUP FIRE, LLC | : | |

Appeal from the Order Entered January 13, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210301222

BEFORE: BOWES, J., OLSON, J., and McLAUGHLIN, J.

DISSENTING MEMORANDUM BY McLAUGHLIN, J.: **FILED OCTOBER 8, 2024**

Because I would conclude the trial court did not abuse its discretion in overruling the preliminary objection to venue, I respectfully dissent. My disagreement with the majority is not founded on its understanding of applicable principles of law, but rather with the application of the law to the facts here. The Troseths chose Philadelphia as their forum, and Appellants had the burden of convincing the trial court that their doing so was improper. As Appellants lost that argument before the trial court, it is now for them to convince us on appeal that the trial court abused its discretion in rejecting their preliminary objections. Based on the facts of this case, I cannot agree that the court abused its discretion in finding venue proper in Philadelphia.

The record establishes that Carson has a business relationship with Ehmke, a company based in Philadelphia. This relationship included Ehmke supplying and installing interiors on Carson's helicopters and Carson fabricating specific sheet metal parts for Ehmke. Jordan Carson Dep., Sept. 21, 2021, at 16-17; Carson Dep. Exh. C; Carson Dep Exh. D. The relationship began as early as 2014[1] and continued through 2021 – the year the Troseths instituted this suit. Carson Dep. at 18; Carson Dep. at Exh. C (Carson's purchase orders sent to Ehmke); Carson Dep. at Exh. D (Ehmke Sale History to Carson from 2013 through 2021). The Carson-Ehmke business relationship

---

[1] Carson testified that Ehmke first did work for Carson in 2012, but Ehmke was a subcontractor at that time and Carson did not have a formal relationship with it. Carson Dep. at 18.

did not involve the mere purchase of incidental products that could be purchased from a multitude of vendors. Rather, it included the purchase from a Philadelphia company of materials essential to Carson's unique business. It further included Carson's fabrication and sale of products to that same Philadelphia company.

The majority relies in part on ***Hangey v. Husqvarna Prof'l Prods., Inc.***, 304 A.3d 1120, 1148 (Pa. 2023), to determine the contours of the quality prong. I believe that reliance is erroneous. The Supreme Court in ***Hangey*** pointedly noted that no party had challenged on appeal the trial court's determination that the defendant's "activities in Philadelphia satisfy the 'quality' prong. . . ." ***Id. Hangey*** thus did not express an opinion on the quality prong.

A more relevant case is ***Purcell v. Bryn Mawr Hospital***. There, the Pennsylvania Supreme Court found the quality prong not met where the plaintiff relied on "contractual affiliations with residency programs of teaching hospitals in Philadelphia" and the fact that the Montgomery County hospital employed medical residents from the Philadelphia hospital. 579 A.2d 1282, 1283-84, 1287 (Pa. 1990). The Court noted "[t]he rotation and use of medical personnel is essentially an educational process which does not amount to the quality of business activity" contemplated by the case law. ***Id.*** at 1287. It further noted that the hospital's permanent staff would be capable of treating the patients without the medical students from Philadelphia, such that the arrangements with the medical schools were "mere incidental contacts." ***Id.***

It further concluded the "mere purchase of hospital supplies from Philadelphia merchants [could not] form a satisfactory rationale for conferring venue." ***Id.***

Here, I would conclude that the trial court did not abuse its discretion in determining that Carson's contacts with Philadelphia met the quality prong of the venue analysis. Unlike the contacts in ***Purcell***, Carson's relationship with Ehmke was an on-going relationship for the purchase of unique parts for helicopters and the sale of fabricated parts. The relationship between Carson and Ehmke went to the core of Carson's business—the maintenance, repair, and overhaul of S61 helicopters. ***See*** Carson Dep. at 8. The relationship included the purchase of unique products from a Philadelphia company— helicopter interiors. Such contacts were "directly furthering, or essential to," Carson's corporate objectives, and not merely incidental. ***See Hangey***, 304 A.3d at 1142 (quoting ***Shambee v. Delaware & H.R. Co.***, 135 A. 755, 757-58 (Pa. 1927)).

I would further find no abuse of discretion regarding the quantity prong. Although the majority notes the "snapshot" rule – the principle that we are to conduct the quantity/quality analysis based on the defendant's contacts with the forum as of the filing of the suit – respectfully, it fails to apply it. The majority claims that the quantity prong is not met because in 2021, only $73,000 in sales occurred, and $1,229 of sales occurred through September 2021. However, the evidence showed that at the time the suit was filed, the business relationship between Ehmke and Carson had existed since at least 2014 and continued to exist in 2021, when the suit was filed. This continuous

relationship meets the quantity prong. **See Hangey**, 304 A.3d at 1148–49 ("The facts HPP maintained business relationships with these authorized dealers, and year after year executed consistent sales, tend to establish HPP's business activities in Philadelphia County were so continuous and sufficient to be termed general or habitual." (cleaned up)). Because I would conclude the court did not abuse its discretion in finding venue proper as to Carson, I would find it also did not abuse its discretion in finding venue proper as to Heligroup. **See id.** at 1142.

The trial court in this case rendered a reasoned decision based on evidence. On the present record, I cannot find an abuse of discretion. I respectfully dissent.