J-A21023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RONALD SCOTT HANGEY AND ROSEMARY HANGEY H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 3298 EDA 2017 |
| HUSQVARNA PROFESSIONAL PRODUCTS, INC., HUSQVARNA GROUP, HUSQVARNA U.S. HOLDING, INC., HUSQVARNA AB, AND TRUMBAUER'S LAWN AND RECREATION, INC. | : | |

Appeal from the Order September 7, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 1015  March Term, 2017

BEFORE:  PANELLA, J., OLSON, J., and McLAUGHLIN, J.

DISSENTING MEMORANDUM BY OLSON, J.:          **FILED APRIL 01, 2019**

I agree with the bulk of the learned majority's thorough and well-written memorandum.  Indeed, I agree with the majority's factual and procedural recitation, with much of its able summary of our law and precedent, and with its acknowledgement that we review the trial court's venue decision under an abuse of discretion standard.  **See** Majority Memorandum at *5; **see also Krosnowski v. Ward**, 836 A.2d 143, 146 (Pa. Super. 2003) (*en banc*) ("[a] trial court's ruling on venue will not be disturbed if the decision is reasonable in light of the facts.  A decision to transfer venue will not be reversed unless the trial court abused its discretion. . . .  [I]f there exists any proper basis for

the trial court's decision to grant the petition to transfer venue, the decision must stand") (quotations and citations omitted). Nevertheless, I respectfully disagree with the majority's conclusion that the trial court abused its discretion in this case. I believe that the trial court's determination – that the qualitative acts Defendant Husqvarna Professional Products, Inc. (hereinafter "HPP") performed in Philadelphia County were not "so continuous and sufficient to be termed general or habitual" – was reasonable in light of our fairly muddled precedent and the facts of this case. Therefore, I would affirm the trial court and must respectfully dissent from the learned majority's decision.

As the majority notes, the key issue on appeal is whether venue in Philadelphia may be laid against HPP, as HPP is the only remaining defendant that could arguably be deemed to "regularly conduct business" in Philadelphia County. *See* Trial Court Opinion, 3/2/18, at 2; *see also* Appellants' Brief at 16. If venue in Philadelphia County is proper as to HPP, Appellants may maintain their "action to enforce . . . joint and several liability against" Defendants HPP, Husqvarna Group, and Trumbauer's Lawn and Recreation, Inc. in Philadelphia. *See* Pa.R.C.P. 1006(c)(1) ("an action to enforce a joint or joint and several liability against two or more defendants . . . may be brought against all defendants in any county in which the venue may be laid against any one of the defendants").

Pennsylvania Rule of Civil Procedure 2179 prescribes venue for personal actions against corporations. *See* Pa.R.C.P. 1006(b) ("[a]ctions against the following defendants, except as otherwise provided in subdivision (c), may be

- 2 -

brought in and only in the counties designated by the following rules: . . . corporations and similar entities, Rule 2179"). As is relevant to the current appeal, Rule 2179(a)(2) declares: "a personal action against a corporation or similar entity may be brought in and only in . . . a county where it regularly conducts business." Pa.R.C.P. 2179(a)(2).[1]

Our Supreme Court has held that the determination of whether a corporation "regularly conducts business" in a particular county depends upon the "quality" and "quantity" of the business conducted within the county. Thus, for a corporation to "regularly conduct business" in a county:

> the business engaged in must be sufficient in quantity and quality. The term "quality of acts" means those directly, furthering, or essential to, corporate objects; they do not include incidental acts. By "quantity of acts" is meant those which are so continuous and sufficient to be termed general or habitual. A single act is not enough.

**Monaco v. Montgomery Cab Co.**, 208 A.2d 252, 256 (Pa. 1965) (corrections and some quotations omitted), *quoting* **Shambe v. Delaware & H.R. Co.**, 135 A. 755, 757 (Pa. 1927).

In essence, the venue criteria found at Rule 2179(a)(2) "provide[] a theory of transient jurisdiction by counties in which the corporation is present by virtue of its business activities or contacts. In this circumstance, and provided that the business contacts are more than incidental, a corporation

---

[1] Rule 2179 lists other circumstances in which a plaintiff may properly bring a personal action against a corporation in a certain county. **See** Pa.R.C.P. 2179. However, no other circumstance is applicable to the current appeal. **See** Appellants' Brief at 16.

- 3 -

can be compelled to defend itself." ***Purcell v. Bryn Mawr Hosp.***, 579 A.2d 1282, 1284 (Pa. 1990). The rationale and purpose of the rule is to "permit a plaintiff to institute suit against the defendant in the county most convenient for him and his witnesses" while, at the same time, assuring that "the corporation which has been sued ha[s] sufficient connection to the county." ***Burdett Oxygen Co. v. I.R. Wolfe & Sons, Inc.***, 249 A.2d 299, 302 (Pa. 1969) (quotations and citations omitted); ***Purcell***, 579 A.2d at 1286.

As the trial court and the parties agree, "there is no question Defendant [HPP's] activities in Philadelphia satisfy the 'quality' prong" of the "regularly conducts business" test. Trial Court Opinion, 3/2/18, at 5; ***see also*** Appellants' Brief at 19; Appellees' Brief at 22. This is because:

> Defendant [HPP] is in the business of distributing consumer outdoor products, such as lawnmowers, to retailers, who in turn sell the products to consumers. The uncontroverted evidence shows Defendant [HPP] furthers this business objective by distributing products to two Philadelphia retailers, predominantly DL Electronics, Inc. For this reason, the activities of [HPP] satisfy the "quality" prong of the [test].

Trial Court Opinion, 3/2/18, at 5 (citations and footnote omitted).

The dispute in the case at bar centers upon the "quantity" prong of the test. As the trial court explained, Appellants failed to demonstrate that HPP's qualitative acts were "so continuous and sufficient to be termed general or habitual":

> Here, the evidence of record shows that in 2016, only $███████ out of Defendant [HPP's] $████ billion national revenue came from direct sales in Philadelphia County; this amounts to ████% of Defendant [HPP's] annual revenue

that is attributable to direct sales in Philadelphia County. The figures from 2014 and 2015 are similar. This *de minimis* amount of business . . . is not general and habitual. . . .

Trial Court Opinion, 3/2/18, at 6.

On appeal, Appellants claim that the trial court erred in concluding that HPP's qualitative acts in Philadelphia do not satisfy the "quantity" prong of the test. In particular, Appellants claim, the record evidence demonstrates that "[HPP's] consumer outdoor products are continuously offered for sale in Philadelphia County, and because the sales of those products in Philadelphia County are occurring on a frequent and recurring basis," HPP's qualitative acts are "so continuous and sufficient to be termed general or habitual." Appellants' Brief at 28.[2] Moreover, Appellants claim that the trial court erred

---

[2] Appellants also claim that the trial court erred when it failed to take into consideration the "[HPP's] products sold at big box retailers such as Lowe's." Appellants' Brief at 26. However, as the trial court explained, HPP does not sell its products to the "big box retailers" in Philadelphia:

> In the case of "big box" retailers, John Stanfield, the corporate representative for [HPP], testified that [HPP] **delivers its products to the retailers' distribution centers, none of which are located in Philadelphia County**. Once the [HPP] products are delivered to the retailers' distribution centers, **the retailers retain sole discretion as to where the products will be offered for sale**, including stores located in Philadelphia County.

Trial Court Opinion, 3/2/18, at 3 (emphasis added).

Moreover, and regardless, even if these sales could be considered "direct" – and not "incidental" – acts of HPP in Philadelphia, Appellants' claim of error immediately fails because the record contains no evidence regarding the quantity of the "big box retailer" sales. Therefore, Appellants cannot establish

when, in concluding that HPP's acts did not satisfy the "quantity" prong, the trial court "focus[ed] exclusively on the numerical result obtained from dividing the supposed total amount of sales in Philadelphia County by the total amount of sales nationwide." *Id.* at 20. The majority agrees with Appellants and concludes that the trial court abused its discretion in this case. I disagree. I believe that the trial court was well within its discretion when it sustained the preliminary objections to venue.

As noted, for purposes of establishing venue, our Supreme Court has defined the term "quantity of acts" as acts that "are so continuous and sufficient to be termed general or habitual. A single act is not enough."

---

that any alleged trial court error caused them prejudice. *See Richmond v. Otter*, 70 A.2d 314, 316 (Pa. 1950) ("[h]armful error is requisite to a reversal upon appellate review").

On appeal, Appellants fault HPP and, strangely, the trial court for the absence of this evidence. Appellants' Reply Brief at 11-12. However, the trial court's July 7, 2017 rule to show cause did not limit the scope of the discovery applicable to the issue of venue; Appellants did not file a motion to compel the data; and, Appellants do not claim that any trial court ruling caused the evidence to be absent from the record. Instead, Appellants apparently blame the trial court for its later determination – in its Rule 1925(a) opinion – that the "big box retailer" sales were "legally irrelevant to determining whether [HPP] regularly conducted business in Philadelphia County." *See id.* at 11. The trial court's determination that the "big box retailer" sales did not satisfy the "quality" prong of the test came after the completion of discovery and after the September 6, 2017 oral argument – and, thus, after Appellants were given the opportunity, and failed, to demand additional discovery to establish the quantity of sales of HPP products by big box retailers in Philadelphia County. Therefore, I would conclude that Appellants cannot obtain relief on this claim.

*Monaco*, 208 A.2d at 256 (corrections and some quotations omitted). Further, with respect to the "quantity" prong, our Supreme Court has held:

> It must be remembered that it is the word "regularly" which we are construing and not "principally." A corporation may perform acts "regularly" even though these acts make up a small part of its total activities. . . . The question is whether the acts are being "regularly" performed within the context of the particular business.

*Id.* (citations omitted).

In applying the above language, both our Supreme Court and this Court have held that the "quantity" prong of the test is satisfied where even one to two percent of a corporation's total business is consummated in a particular county. *See Canter v. Am. Honda Motor Corp.*, 231 A.2d 140 (Pa. 1967) (the foreign defendant "regularly conducted business" in Philadelphia County where the defendant admitted that "1 or 2 percent [of its total business] was consummated in Philadelphia;" as to the "quantity" prong of the test, "1 to 2 percent of the total business was sufficient to satisfy the test . . . as to quantity"); *see also Monaco*, 208 A.2d at 252 (a taxi cab company "regularly conducted business" in Philadelphia County, where "[f]rom five to ten percent of [the company's] gross business . . . [in] fares [were] collected in Philadelphia County at the end of rides which involve[d] driving a cab" into Philadelphia); *Zampana-Barry v. Donaghue*, 921 A.2d 500, 503 (Pa. Super. 2007) ("quantity" prong of the test satisfied as to Philadelphia County, where the Delaware County law firm "consistently [] generated approximately three to five percent of its gross business revenue from cases in Philadelphia

County"); **Lugo v. Farmers Pride, Inc.**, 967 A.2d 963 (Pa. Super. 2009) (concluding that the Lebanon County corporation "regularly conducted business" in Philadelphia County; as to the "quantity" prong of the test, it was satisfied because "appellee admits that it sells its products to brokers in Philadelphia County and that the amount constituted less than 0.5% of its total premium chicken sales and approximately 1.9% of its total B grade product sales as of July 2006, when appellants first filed suit;" the percentages of total sales "approximate[] the[] amounts" that our Supreme Court confronted in **Cantor** and, thus, "we likewise find that [the defendant] regularly conducted business in Philadelphia County").

Nevertheless, this Court has also held that the "quantity" prong of the "regularly conducts business" test is not satisfied where a corporation conducts an "extremely small" percentage of its total business in a county – even if it conducts that business regularly. **Battuello v. Camelback Ski Corp.**, 598 A.2d 1027, 1029-1030 (Pa. Super. 1991). For example, in **Singley v. Flier**, 851 A.2d 200 (Pa. Super. 2004), the plaintiff sued Villanova University in Philadelphia County, for personal injuries she sustained while on Villanova's Delaware County campus. The trial court sustained Villanova's preliminary objections to venue and held that Villanova did not "regularly conduct business" in Philadelphia County. **Id.** at 201.

On appeal, the plaintiff cited to evidence that Villanova "offers three graduate level courses in its Electrical and Computer Engineering (ECE)

Department at the Philadelphia Naval Yard" – and that it had "offered these courses for many years." *Id.* at 202-203. Plaintiff thus claimed:

> because the instruction of students and "transmission of knowledge" is essential to Villanova's corporate object, the classes that the University offers in Philadelphia County are of sufficient "quality" to satisfy the regularly conducts business test. [Further, these classes] . . . satisfy the "quantity" test "because Villanova has offered these courses for many years."

*Id.* (citations omitted).

This Court held that the plaintiff's claim failed. Of importance to the case at bar, we explicitly held:

> even if we credit [plaintiff's] unsupported contention [that] these courses have been offered for "many years," we would still find that the quantity of these contacts – three graduate level courses – is lacking when viewed in light of the University's entire academic program, which includes several graduate degrees, as well as a law school.

*Id.* at 203 (citations omitted).

Therefore, the *Singley* Court held that even consistent and longstanding business activity in a particular county is not enough to satisfy the "quantity" prong of the test. Instead, as we held, to satisfy the "quantity" prong, the qualitative acts must be "so continuous and sufficient to be termed general or habitual" – and, to determine whether the qualitative acts are sufficient, an important consideration is the percentage of total business consummated in the county. *See id.*; *see also Monaco*, 208 A.2d at 256 (emphasis added). Similar results were obtained in *PECO Energy Co. v. Philadelphia Suburban Water Co.*, 802 A.2d 666 (Pa. Super. 2002) and in

***Battuello***, 598 A.2d at 1027. ***See PECO Energy Co.***, 802 A.2d at 666 (venue in Philadelphia held improper because Philadelphia Suburban Water Co. ("PSWC") did not "regularly conduct business" in the county; specifically, PSWC's contacts with Philadelphia did not satisfy either the "quality" or "quantity" prong of the test, where "approximately one mile of PSWC's transmission pipeline runs through Philadelphia County, although it provides no water to Philadelphia County residents and accounts for only .036% of PSWC's overall piping system. Furthermore, [PSWC made] a one-time purchase in the year 2000 of 300,000 gallons of water from the City of Philadelphia in Philadelphia County, which accounted for only .0007% of PSWC's overall water purchases over the last ten years"); ***Battuello***, 598 A.2d at 1027 (in plaintiffs' personal injury lawsuit filed in Philadelphia County against Camelback, a Monroe County ski area, venue was not proper in Philadelphia, even though "a Philadelphia tour company regularly sends its customers to Camelback and . . . Philadelphia residents ski at Camelback;" the contacts with Philadelphia failed the "quantity" prong of the test because "the number of Philadelphia season pass holders is extremely small in relation to the total number of season passes sold" and "less than one percent of Camelback's business consists of skiers sent by [the tour company, which] … is far too small to qualify as 'general or habitual'").

In the case at bar, the only record evidence of HPP's direct acts in Philadelphia is that HPP derives approximately $██████ of revenue per year in direct, Philadelphia sales to two authorized dealers, and that these sales

account for a mere ███ % of HPP's annual national revenue.[3]  The trial court considered this evidence and concluded that HPP's qualitative acts in Philadelphia were "*de minimis*" and, thus, were not "so continuous and sufficient to be termed general or habitual."  Trial Court Opinion, 3/2/18, at 6.

In this case, the majority holds that the trial court abused its discretion when, in concluding that HPP's acts did not satisfy the "quantity" prong, it focused upon the percentage of HPP's total business consummated in Philadelphia County.  According to the majority, it would have placed more emphasis on the fact that HPP is a large, multi-billion dollar corporation that had "at least one authorized dealer [] in Philadelphia to which it delivered products for sale" – and that it sold approximately $ ██████ in product per year in Philadelphia.  **See** Majority Memorandum at *9.

_____

[3] At oral argument, Appellants requested that we remand the case so that additional discovery may be conducted regarding the quantity of Husqvarna products sold at Philadelphia "big box retailers."  Appellants did not request this relief either at the trial court level or in their brief on appeal.  Therefore, the claim is waived.  Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); **Commonwealth v. Spotz**, 716 A.2d 580, 585 n.5 (Pa. 1999) ("[the Pennsylvania Supreme Court] has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief").

Even if not waived, remand would not be appropriate under the facts of this case.  As previously noted, Appellants were given an opportunity to conduct discovery relevant to the issue of venue.  Appellants failed to take action at the trial court level to obtain this information; therefore, remand would not be proper, as Appellants are not entitled to a second bite at the proverbial apple.

However, and respectfully, in rendering its decision, the trial court did not consider irrelevant the dollar figure of HPP's direct Philadelphia sales or the fact that HPP is a large, multi-billion dollar corporation and it did not rely solely on the percentage of HPP's total sales conducted in Philadelphia. Rather, the trial court's opinion demonstrates that it considered the totality of the evidence, but concluded that evidence of HPP's *de minimis* percentage of total business conducted in Philadelphia was important and weighty enough to carry the day and to render venue in Philadelphia improper. **See** Trial Court Opinion, 3/2/18, at 1-6 (trial court notes all of the evidence the majority cites, but concludes that venue in Philadelphia is not proper because "in 2016, only $███████ out of [HPP's] $████ billion national revenue came from direct sales in Philadelphia County; this amounts to ████% of [HPP's] annual revenue that is attributable to direct sales in Philadelphia County. The figures from 2014 and 2015 are similar. This *de minimis* amount of business . . . is not general and habitual").

As our Supreme Court has emphasized:

> When a court comes to a conclusion through the exercise of its discretion, there is a heavy burden to show that this discretion has been abused. It is not sufficient to persuade the appellate court that it might have reached a different conclusion, it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Absent an abuse of that discretion, we will not disturb the ruling of the trial court.

***Commonwealth v. Eichinger***, 915 A.2d 1122, 1140 (Pa. 2007) (citations omitted).

From a review of our case law, it is apparent that, in determining whether a corporation's qualitative acts satisfy the "quantity" prong, our Supreme Court and this Court have consistently looked at the percentage of a corporation's total business consummated within the county. Given this, I believe that the majority is incorrect to assail the trial court's method of analysis. Further, given the facts of this case and our chaotic precedent regarding the specific metrics that suffice to fulfil the "quantity" prong, I believe that the majority is incorrect to find that the trial court abused its discretion in transferring venue. Specifically, in light of our precedent and the facts of this case, it cannot be said that the trial court's determination was "manifestly unreasonable" and it certainly cannot be said that the determination was "the result of partiality, prejudice, bias or ill-will." ***See Nat'l Penn Bank***, 672 A.2d at 328.

In conclusion, I quote from Judge Klein's concurring opinion in ***Zampana-Barry***, which I find particularly apt:

> in my opinion, there are no clear standards to guide the trial court in determining whether or not the "quantity" test has been met. Our case law is inconsistent and lacks specific guidelines for determining the appropriate quantity of contacts necessary to obtain venue over a corporation under Pa.R.C.P. 2179(a)(2). Whether or not the "quantity" test has been met is determined more by the gut feeling of the trial judge rather than by any objective standard. I note this because I believe that the matter at least merits clarification by a Court *en banc*, if possible.

. . .

As our case law has developed, it would be the rare case where we could say that the trial court erred no matter which way it ruled on the "quantity" test. I do not believe it serves justice to have such a loose standard. In many of these cases, it would be just as easy to achieve justice by going to the Atlantic City casinos and betting "red" or "black" on roulette as by having a judicial determination.

As the majority notes, "quantity of acts" means those that are so continuous and sufficient as to be considered habitual. A single act is not enough. The determination of what quantity is sufficient to confer venue must be made on a case-by-case basis. *See Purcell* [579 A.2d at 1285]. The only problem is that there is no guidance in a close case. Is it 2%? 4%? 6%? 8%? It seems to depend less on the type of business than on the attitude of the trial judge.

. . .

In my view, none of the cases offers any clear guidance for trial courts in determining what quantity of contacts is sufficient to confer venue over a corporation under Rule 2179(a)(2). It appears that a plaintiff can file suit against a corporate defendant in any county where it conducts any amount of business, even if it is as little as 1 or 2%. I am concerned about the precedent we are setting by allowing venue to stand in Philadelphia County against a [corporation], where it is undisputed that none of the activities giving rise to the litigation arose in Philadelphia. We may be giving plaintiffs too much leeway in selecting a forum in which to litigate their claims against a corporation.

*Zampana-Barry*, 921 A.2d at 506-509 (Klein, J. concurring) (some citations omitted).[4]

---

[4] Respectfully, Rule 2179(a)(2) and the majority's decision today open the Philadelphia County courts up to hearing and deciding cases that have no factual relationship to Philadelphia – and to which Philadelphia has little

I respectfully dissent.

_____

interest.  To be sure, HPP has no physical store, office, or employees in Philadelphia; Appellants' cause of action did not arise out of and is not related to HPP's activities in Philadelphia; no part of the "transaction or occurrence" that led to Appellants' injuries happened in Philadelphia; and, HPP's Philadelphia revenue accounts for a mere ████████████████████ of its national revenue.  Yet, Philadelphia must bear the public costs associated with hearing and deciding this case and those like it, including increased court congestion, the consumption of judicial and staff resources, and the expenditure of juror time.