J-A21001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF RITA QUIGLEY, BY ITS REPRESENTATIVE EDWARD CLEMSON, EXECUTOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | No. 1022 EDA 2022 |
| POTTSTOWN HOSPITAL, LLC, TOWER HEALTH, JOHN DOES 1-10 | : | |

Appeal from the Order Entered April 7, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 2107-01389

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.: **FILED OCTOBER 28, 2022**

The Estate of Rita Quigley (Decedent), by its representative Edward Clemson, Executor (Plaintiff), appeals from the order of the Court of Common Pleas Philadelphia County sustaining the preliminary objections of Pottstown Hospital, LLC, Tower Health, and John Does 1-10 (collectively, Defendants) to Plaintiff's first amended complaint and transferring venue of the matter to Montgomery County. Because Defendant Tower Health's acts are more than sufficient to establish venue in Philadelphia County, we reverse and remand.

Decedent was a resident of Chestnut Knoll, an assisted living facility located in Boyerstown, Berks County, Pennsylvania. Decedent suffered from dementia and cognitive impairment. On October 28, 2020, Decedent was admitted to Pottstown Hospital. Pottstown Hospital is located in Montgomery

County, Pennsylvania, and is owned by Tower Health. Tower Health's registered office and principal place of business are located in West Reading, Berks County, Pennsylvania. On November 1, 2020, the Decedent was discharged and transported from Pottstown Hospital to PowerBack Rehabilitation Center, which is located in the Phoenixville area. Upon the Decedent's arrival at PowerBack, PowerBack's medical staff conducted a routine physical exam and discovered Decedent had significant injuries consistent with a sexual assault.[1] Unable to admit Decedent based upon those injuries, PowerBack immediately transferred Decedent to Phoenixville Hospital, a facility also owned by Tower Health, where medical personnel performed a medical examination of Decedent and made notes about her physical condition.[2]

On July 23, 2021, Plaintiff filed a complaint against Defendant Tower Health in Philadelphia County, at 8835 Germantown Avenue, Philadelphia,[3] alleging that the Decedent was raped and sexually assaulted while she was a

---

[1] Decedent passed away on January 2, 2021. Letters Testamentary were granted to Plaintiff on March 2, 2021.

[2] The complaint alleges that Phoenixville Hospital contacted Pottstown Hospital to inquire about Decedent's injuries, but Pottstown Hospital denied ever observing any of the alleged injuries sustained by Decedent. Plaintiff's Complaint, 7/19/21, at ¶ 24.

[3] This is the address of Chestnut Hill Hospital, another hospital ----a subsidiary--owned by parent company, Tower Health. Chestnut Hill Hospital is not a defendant in the matter.

patient at Pottstown Hospital.[4]   Specifically, the complaint included three counts:   negligence (Count I); premises liability (Count II); assault/rape—respondeat superior (Count III).  The complaint alleges that "Defendant Tower Health is a Pennsylvania non-profit corporation that operates the Pottstown Hospital with a registered address of 420 S. Fifth Avenue[,] West Reading[,] PA 19611 and a Philadelphia address, where it regularly conducts business, of 8835 Germantown Ave[nue], Philadelphia, PA 19118."  Plaintiff's Complaint, 7/19/21, at ¶ 3.  On August 30, 2021, Plaintiff filed an amended complaint supplementing the original complaint with two additional counts:   negligent supervision (Count IV) and negligent hiring (Count V).   The amended complaint also attached various 2019-2020 financial statements for Tower Health to support Plaintiff's allegation that Tower Health regularly conducts business in Philadelphia.

On September 17, 2021, Defendants filed preliminary objections[5] alleging that venue of the matter properly lies in Montgomery County because Philadelphia County "has **no relationship**, let alone a substantial relationship, to the alleged controversy."  Defendants' Supplemental Brief in Support of

---

[4] Following an investigation into the matter, police were unable to definitively conclude that Decedent was the victim of sexual assault.   However, a rape kit/examination conducted on Decedent by Phoenixville Hospital concluded that the findings were consistent with Decedent having been the victim of a sexual assault.  Plaintiff's Complaint, 7/19/21, at ¶ 26.

[5] **See** Pa.R.C.P. 1028(a)(1) (providing, in relevant part, preliminary objections may be filed by any party to any pleading on following bases:   lack of jurisdiction over subject matter of action or defendant; improper venue; or improper forum or service of writ of summons or complaint).

Preliminary Objection to Plaintiff's First Amended Complaint, 1/13/22, at 6 (emphasis in original). To support their preliminary objections, Defendants averred that: Decedent was never treated in Philadelphia County at any relevant time; Decedent was not alleged to have been raped or sexually assaulted in Philadelphia County; Plaintiff's allegations centered exclusively around events purported to have occurred at Pottstown Hospital in Montgomery County; Tower Health does not have its principal place of business or registered office in Philadelphia; Tower Health does not regularly conduct business in Philadelphia County; only one of five non-profit hospitals that is a part of the Tower Health network is located within Philadelphia County; Chestnut Hill Hospital and Pottstown Hospital are mere subsidiaries of their parent corporation, Tower Health; Tower Health is a "separate and distinct legal entity from either Defendant Pottstown Hospital or non-party Chestnut Hill Hospital;" the alleged cause of action arose exclusively in Montgomery County; and, the alleged occurrence out of which the alleged cause of action arose occurred exclusively in Montgomery County. *Id.* at 5-7.

Plaintiff filed an answer to Defendants' preliminary objections claiming that Tower Health owns Pottstown Hospital and "the two are inextricably intertwined." Plaintiff's Memorandum of Law in Opposition to Defendants' Preliminary Objections, 10/7/21, at 5. Specifically, Plaintiff averred that: Tower Health's financial statements group its five Montgomery, Philadelphia, and Chester County hospitals together; Chestnut Hill Hospital, located in

Philadelphia, is one of the five hospitals owned by Tower Health; Tower Health's website states "Chester/Montgomery/Philadelphia hospitals are tax-exempt not-for-profit corporations providing acute and post[-]acute care;" Chester/Montgomery/Philadelphia clinics and practices are part of Tower Health Medical Group (THMG);[6] THMG "recruits physicians and provides administrative services for [Reading] Hospital, including supervision and instruction for medical students completing their residency training;" and Chestnut Hill Hospital is located in and regularly conducts business in Philadelphia County. *Id.* at 5-6.

The trial court permitted the parties to file supplemental briefs and to submit affidavits, deposition testimony, as well as documentary evidence to support their positions on the venue issue. *See* Pa.R.C.P. 1028 (preliminary objections raising improper venue cannot be determined from facts of record; evidence, by deposition or otherwise, must be presented to court deciding objections). On November 3, 2021, Tower Health filed a motion to have itself dismissed from the underlying case, attesting to its "non-involvement in the care and/or treatment rendered to [Decedent]." Tower Health Motion to Dismiss, 11/2/21, at 1-2. *See* Pa.R.C.P. 1036. Plaintiff filed an answer

---

[6] THMG is a tax-exempt entity established to assure access to high quality primary care physicians and specialty physicians in sufficient numbers to meet community needs. Tower Health and Subsidiaries, Notes to Consolidated Financial Statements (June 30, 2020 and 2019) (Statements), at 8.

opposing Tower Health's motion to dismiss. On February 14, 2022, the trial court denied Tower Health's motion to dismiss.

On April 7, 2022, the trial court granted Defendants' preliminary objections and transferred venue of the matter to Montgomery County. Plaintiff filed a timely notice of appeal[7] and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Plaintiff presents the following issues for our consideration:

> (1)    Did the trial court err and/or abuse its discretion by giving undue consideration to Tower Health's relationships with its subsidiaries, as Tower Health is a named party, giving insufficient consideration to Tower Health's direct and uncontradicted contacts in Philadelphia County, and failing to conduct any quality-quantity analysis when considering whether venue was proper in Philadelphia County?
>
> (2)    Did the trial court err and/or abuse its discretion by failing to apply the proper burden of proof for preliminary objections as to improper venue and failing to give proper weight to Plaintiff's preferred venue of Philadelphia County, as well as the presumption in retaining Plaintiff' choice of venue, when considering whether venue was proper in Philadelphia County?
>
> (3)    Did the trial court err and/or abuse its discretion by failing hold an evidentiary hearing on venue prior to transferring the matter from Philadelphia County to Montgomery County and failing to state in its order or opinion the reasons why the [c]ourt did not hold any evidentiary hearing on venue in this matter?

Plaintiff's Brief, at 4 (renumbered for ease of disposition).

---

[7] Although interlocutory, a trial court's order changing venue in a civil action is immediately appealable as of right. *See* Pa.R.A.P. 311(c).

It is well-established that "a plaintiff's forum selection is given great weight. Nevertheless, the trial court is vested with broad discretion in determining whether the original choice of forum was proper. When any proper basis exists for the trial court's decision to change venue, that decision must stand." *Masel v. Glassman*, 689 A.2d 314, 320 (Pa. Super. 1997) (citations omitted).

> When reviewing a trial court's decision to transfer venue, the appellate court's standard of review is as follows: A trial court's decision to transfer venue will not be disturbed absent an abuse of discretion. An abuse of discretion occurs when the trial judge overrides or misapplies the law, or exercises judgment in a manifestly unreasonable manner, or renders a decision based on partiality, prejudice, bias[,] or ill-will.

*Sehl v. Neff*, 26 A.3d 1130, 1132 (Pa. Super. 2011) (citation and quotation marks omitted). When venue is challenged, "the burden of proving jurisdiction is upon the party asserting it." *Deyarmin v. Consol. Rail Corp.*, 931 A.2d 1, 9 (Pa. Super. 2007). *See County Constr. Co. v. Livengood Constr. Corp.*, 142 A.2d 9, 13 (Pa. 1958) ("for procedural purposes, objections to venue are treated as raising a question of jurisdiction").

The venue rules of this Commonwealth provide, in part, that a personal action against a corporation[8] may be brought in the county where its registered office or principal place of business is located **or a county where**

---

[8] In addition, "an action to enforce a joint or joint and several liability against two or more defendants . . . may be brought against all defendants in any county in which the venue may be laid against any one of the defendants under the general rules." Pa.R.C.P. 1006(c)(1).

**it regularly conducts business**. *See* Pa.R.C.P. 2179(a)(1)-(2) (emphasis added).[9] *But cf.* Pa.R.C.P. 1006(a) (a) (in claim involving individual, venue is only appropriate where "a transaction or occurrence took place out of which the cause of action arose" or where "the property . . . which is subject matter of the action is located").

> In determining where a corporation "regularly conducts business," a court must focus on the nature of the acts the corporation allegedly performs in that county; those acts must be assessed both as to their quantity and quality.
>
> > "Quality of acts" means "**those directly, furthering or essential to, corporate objects**; they do not include incidental acts." Quantity means those acts that are "**so continuous and sufficient to be termed general or habitua**l." The acts of the corporation must be distinguished: those in "aid of a main purpose" are collateral and incidental, while "**those necessary to its existence"** are "direct."

*Masel*, 689 A.2d at 317 (emphasis added), *citing Purcell v. Bryn Mawr Hospital*, 550 A.3d 1320, 1325 (Pa. Super. 1988). "Courts must consider all of the evidence in context to determine whether the defendant's business activities in the county were regular, continuous, and habitual." *Hangey v. Husqvarna Prof'l Prods.*, 247 A.3d 1136 (Pa. Super. 2021) (en banc). Finally, "[a] corporation may perform acts 'regularly' even though these acts

---

[9] Under Rule 2179(a), an action may also be brought against a corporation in: "a county where the cause of action arose; a county where a transaction or occurrence took place out of which the cause of action arose[;] or a county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property." *Id.* at (3)-(5).

- 8 -

make up a small part of its total activities." ***Canter v. American Honda Motor Corp.***, 231 A.2d 140, 142 (Pa. 1967).

Here, Plaintiffs claim that they have established venue in Philadelphia County based upon the fact that Tower Health, a named Defendant in the underlying action, regularly conducts business there in accordance with Rule 2179(a)(2). Defendants cite to ***Wimble v. Parx Casino & Greenwood Gaming & Entm't, Inc.***, 40 A.3d 174 (Pa. Super. 2012), for the proposition that "venue cannot be established against one corporation based on the activities of a related, but legally distinct and separate, corporation." Appellee's Brief, at 33. However, while ***Wimble*** does recognize that a parent and wholly-owned subsidiary are separate and legal entities, ***Wimble***, ***supra*** at 178, the holding of that case does not categorically prevent a plaintiff from establishing venue based on a parent corporation's contacts in a given jurisdiction. Specifically, where a parent company is a named defendant in an action and has both the quality and quantity of contacts to prove that it regularly conducts business in plaintiff's chosen forum, venue may properly lie under Rule 2179.

Plaintiff is not attempting to establish venue based solely on the business activities of one of its sister hospitals, Chestnut Hill Hospital, that is located in Philadelphia. ***See Share Communications Servs of 1800-80 JFK Blvd. Inc. v. Bell Atl. Props. Inc.***, 692 A.3d 570, 573 (Pa. Super. 1997) (advancing proposition that corporation may not be subject to venue based solely upon business activities of sister corporation); ***see also Krosnowski***

***v. Ward***, 836 A.2d 143 (Pa. Super. 2003) (en banc) (no quantity and quality of corporate contacts between hospital and sister hospital sufficient to establish venue in Philadelphia County).

Additionally, Plaintiff does not claim that venue is proper in Philadelphia County because Pottstown Hospital, where Decedent's alleged sexual assault occurred, regularly conducts business there. ***Cf. Purcell***, ***supra*** at 1287 (plaintiffs' wrongful death action alleged negligence solely against Bryn Mawr Hospital and hospital's doctors and nurses, situs of alleged negligence where deceased infant was treated; Philadelphia County not proper venue under Rule 2179(a)(2) where any arrangements Philadelphia-based medical schools had with Bryn Mawr Hospital did not "go beyond mere incidental contacts rather than being essential to Bryn Mawr"); ***Krosnowski***, ***supra*** at 147 (in wrongful death and survival action, alleging professional negligence based on failure to diagnose and treat decedent, sole basis for determining whether venue proper in Philadelphia County "depends on whether Abington Memorial Hospital[, where decedent treated,] regularly conducts business there"). Rather, Plaintiff claims venue is established in Philadelphia County because Defendant Tower Health, Pottstown Hospital's parent company, regularly conducts business in Philadelphia through exercising control and authority over its Philadelphia subsidiaries. In contrast to ***Purcell*** and ***Krosnowski***, Tower Health, the parent company of the hospital where the alleged negligence took place, is a named defendant in the action and several of the five counts forming the basis of Plaintiff's action—negligent hiring, respondeat superior

- 10 -

and negligent supervision—directly implicate Tower Health. ***See*** Appellant's Brief, at 39 ("[Plaintiff's] claims against Tower Health are related to its negligence in its business practices in overseeing the staffing at Pottstown Hospital and negligence in allowing a dangerous condition to exist on the premises of Pottstown Hospital leading to the [alleged] sexual assault of [decedent].").

Factually, in addition to owning Chestnut Hill Hospital, Tower Health is also a full or partial owner of multiple properties located in Philadelphia, including, St. Christopher's Hospital, two urgent care facilities located on Roosevelt Boulevard and Bryn Mawr Avenue, and Tower Health Urgent Care.[10] Consolidated financial statements (Statements), issued by Tower Health in June 2019 and 2020, list "Chester/Montgomery/Philadelphia" hospitals as subsidiaries of Tower, all of which provide acute and post-acute care. Statements, 6/20/20 & 6/20/19, at 8.

The Statements also explain that the "Chester/Montgomery/Philadelphia clinics and practices are part of THMG," an entity that recruits physicians, provides administrative services, supervises and instructs medical students during their residency training, and has "charitable, educational, and scientific purposes." ***Id.*** Finally, Tower Health Enterprises (THE) is a limited liability company that was "formed to hold the interest in joint ventures acquired as

---

[10] Tower Health created Tower Health Urgent Care, which either owns or leases the Philadelphia properties where its urgent care facilities are operated.

part of the acquisition of the Chester/Montgomery/Philadelphia Hospitals in October 2017." *Id.*

Tower Health has also partnered with Philadelphia's Drexel University, to create a joint venture called STC Healthcare Partners LLC (STC). STC is the parent company that owns St. Christopher's Hospital for Children located in North Philadelphia. *Id.* at 9. Tower Health is the managing partner of STC. N.T. Deposition of Karen Karpovich, 12/9/21, at 68-72. *Compare Anthony v. Parx Casino*, 190 A.3d 605 (Pa. Super. 2018) (quality and quantity of acts necessary to sustain venue in plaintiff's forum insufficient where: plaintiff's accident occurred in transfer venue; corporation operating defendant-casino only does business in transfer venue; joint venture to obtain license to operate defendant-casino in plaintiff's forum had not yet been issued; and, no building, slot machines, gaming tables, or customers currently existed in relation to joint venture) *with Hangey*, *supra* at 1143 (multi-billion-dollar corporation, with authorized dealer in Philadelphia, satisfied "quantity" prong of venue analysis; in transferring venue from Philadelphia, trial court improperly relied almost exclusively on percentage of company's Philadelphia business instead of totality of evidence showing "contacts with Philadelphia . . . were 'sufficiently continuous as to be considered habitual'").

Notably, an itemized statement of the services and care rendered to Decedent at Pottstown Hospital (from 10/28/20-11/1/20) and Phoenixville Hospital (from 11/1/20-11/11/20) displays "Tower Health" at the top of the document, with a Philadelphia Post Office Box address underneath it. *See*

Plaintiff's Exhibits 1-2. Nowhere is Pottstown Hospital, Phoenixville Hospital, a Pottstown address, or a Phoenixville address listed on the itemized statement. *Id.*; *see also* N.T. Deposition of Karen Karpovich, 12/9/21, at 53-55. Ms. Karpovich testified that all of the Tower Health acute care facilities utilize the same medical record system that lists Tower Health and the Philadelphia P.O. Box address on its itemized care/services statements. *Id.* at 56-57. Moreover, each of the tri-county hospital providers can access the other facilities' medical records on a central database. *Id.* at 57-63. In addition, when accessing one of the five different Tower Health hospitals' website pages, the visitor it taken to a page labeled "Tower Health." *Id.* at 66.

To demonstrate the control and authority that Tower Health has over its subsidiaries, which includes Philadelphia entities, Plaintiff introduced the deposition testimony of Richard Newell, the CEO of Pottstown Hospital, from another unrelated case brought against Pottstown Hospital and Tower Health. In that case, *Estate of Dorothy M. McCampbell, et al. v. Pottstown Hospital, LLC and Tower Health, et al.*, No. 2019-21724, Montgomery County,[11] Newell testified that he assumed his role in July 2014, and, in

---

[11] Newell's deposition is attached as an exhibit to Plaintiff's Supplemental Brief on Venue filed in the trial court and included in the certified record on appeal. *See* Plaintiff's Supplemental Brief Regarding Venue, 1/13/22, at Exhibit "C." At the time of the underlying fatal accident (October 2018), which formed the basis for the lawsuit in *Estate of McCampbell*, *supra*, Mike Matthews was the President and CEO of Tower Health. N.T. Deposition of Richard Newell, 11/12/21, at 26.

September 2021, became the President and CEO of Phoenixville Hospital. N.T. Deposition of Richard Newell, Jr., 11/12/21, at 11. As CEO of Pottstown Hospital, Newell testified that he is responsible for the hospital's clinical, operational, and financial statuses. *Id.* at 13. With regard to his involvement with Tower Health in his capacity as CEO of two of its subsidiary hospitals, Newell testified that he reports, at least once every two weeks, to Sue Perrotty, the CEO of Tower Health. *Id.* at 14. *See id.* at 26 (Newell referring to Tower Health CEO as "his boss"). During their meetings, Newell testified they discuss "strategy, service line development, financial performance, news in terms of awards or recognitions that [they] receive as a hospital[, and] projects that [they are] looking to undergo from a service[-]type perspective to [] create a safe environment for [their] patients and employees." *Id.* at 14-15. Newell also testified that he discusses hospital policies with Perrotty, including call policies for central scheduling. *Id.* at 15-16. Newell testified that Perrotty "is responsible to do [his] performance evaluation[s]," *id.* at 17, and, if necessary, would handle any disciplinary actions. Newell also testified that Human Resources would suggest any pay bonuses to Sue Perrotty, who would then bring the proposal to the Tower Health Board of Directors which gives final approval for staff increases. *Id.* at 18.

Joanne Judge, general counsel for Tower Health, testified that while Tower Health does not have day-to-day operational involvement with the five acute-care hospitals it owns, it does have the power to ratify or reject nominees for each hospital's board of directors, has a say in its hospitals'

federal legal mandates, provides infrastructure support services to the hospitals, including payroll services, and that the hospitals cannot borrow money without Tower Health's consent. **See** N.T. Deposition of Joanne Judge, 11/11/21, at 14, 16, 28, 21. **See also id.** at 106-07 (Joanne Judge testifying that depending on scope of land improvement project and total projected cost, individual hospital would have to "go to Tower Health" to get final approval in capital budget from its board of directors). **See Hausmann v. Bernd**, 271 A.3d 486, 494 (Pa. Super. 2022) (percentage of company's overall business conducted in given county, standing alone, not meaningful and not determinative of "quantity" prong of venue analysis) (citing **Hangey**, 247 A.3d at 1142-43).

Bearing in mind that "each case rests on its own facts," **Purcell**, **supra** at 1286, we conclude that Tower Health regularly conducts business in Philadelphia County to establish venue. Specifically, Tower Health has the requisite quality and quantity of contacts with that county where it: (1) wholly and partially owns multiple Philadelphia properties, including an acute-care hospital, two urgent care facilities, and a children's hospital; (2) is the managing partner of an LLC that owns a Philadelphia children's hospital; (3) conducts medical billing of all of its subsidiary hospitals through a Philadelphia post office box; (4) actively asserts control and authority over its subsidiaries by: procuring their insurance policies, providing them general counsel, conducting hospital CEO performance reviews and disciplinary actions, ratifying the hospitals' boards of directors, implementing acute-care hospitals'

federal mandates, providing infrastructure support to hospitals, and making final decision on hospitals' large capital projects. *Cf. Battuello v. Camelback Ski Corp.*, 598 A.2d 1027 (Pa. Super. 1991) (corporate defendant's single act of soliciting business in Philadelphia not enough to confer venue).

Here, the evidence demonstrates that Tower Health, a parent corporation and named defendant, regularly conducts business in Philadelphia County for purposes of establishing venue in Plaintiff's chosen forum. Accordingly, we conclude that the trial court abused its discretion when it granted Defendants' preliminary objections and transferred the action from Philadelphia County to Montgomery County.

Order reversed. Case remanded. Venue of matter transferred to Philadelphia County. Jurisdiction relinquished.[12]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2022

---

[12] Having reversed the trial court's order, we need not address Plaintiff's remaining issues.